987 P.2d 1043

**FARMERS INSURANCE COMPANY OF IDAHO, Plaintiff–Counterdefendant— Appellant,**

v.

**Adelyn TALBOT, Defendant– Counterclaimant— Respondent.**

No. 25286.

Supreme Court of Idaho, Pocatello, May 1999 Term.

Sept. 14, 1999.

Comstock & Bush, Boise, for respondent. John A. Bush argued.

SCHROEDER, Justice.

This automobile insurance case concerns underinsured motorist (UIM) coverage. Farmers Insurance Company of Idaho (Farmers) brought a declaratory judgment seeking a determination that it is entitled to set off the amount that the insured, Adelyn Talbot (Talbot), received from the tort-feasor's insurance company from Talbot's maximum UIM liability limit. The district court granted summary judgment in favor of Talbot, ruling that language in the "Dear Policyholder" notice which accompanied the endorsement for UIM coverage conflicted with the limitation of liability and setoff provisions in the endorsement, and, therefore, the endorsement was ambiguous. Because the endorsement was ambiguous, the district court held that Farmers was prohibited from enforcing the limitation of liability and setoff provisions contained in the endorsement. This Court affirms the district court's decision.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Talbot was involved in an automobile accident with a vehicle driven by Dave L. Shield (Shield). Talbot was injured in the accident. At the time of the accident, Talbot had an automobile insurance policy with Farmers which included UIM coverage provided through an endorsement to the policy. The endorsement for UIM coverage reads in relevant part as follows:

**PLEASE KEEP THIS**

**ENDORSEMENT**

**WITH YOUR POLICY**

Dear Policyholder:

This endorsement adds UNDERinsured Motorist Coverage to your policy. It applies when the driver of another vehicle not owned by you, who is liable to you for damages

Elam & Burke, P.A., Boise, for appellant. Bobbi K. Dominick argued.

because of an automobile accident, is insured for liability coverage in amounts less than your actual damages. UNDERinsured Motorist Coverage will pay the difference of the total amount paid by that driver's liability insurance and the amount of your damages, up to the limits of the coverage [This underlined portion is hereinafter referred to in this opinion as the "'Dear Policyholder' language"]. The limits of your UNDERinsured Motorist Coverage are the same as shown in the Declarations for Uninsured Motorist Coverage.

UNDERinsured Motorist Coverage should not be confused with Uninsured Motorist Coverage, which only applies when the owner or operator of the other car has no liability insurance coverage. Your policy has both UNDERinsured and Uninsured Motorist Coverage. However, like Uninsured Motorist Coverage, UNDERinsured Motorist insurance applies only to bodily injury. It does not cover damage to your car, or any other damages not part of the bodily injury.

If you have any questions, please contact your Farmers Agent.

FARMERS INSURANCE GROUP OF COMPANIES

## E1179i
### 1st Edition

### Coverage C–1 UNDERinsured Motorist Coverage

For an additional premium it is agreed that UNDERinsured Motorist Coverage C–1 is added to Part II of your policy.

We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **UNDERinsured motor vehicle** because of **bodily injury** sustained by the **insured person**.

### Limits of Liability

a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of the UNDERinsured Motorist Coverage stated in this policy, and our maximum liability under the UNDERinsured Motorist Coverage is the lesser of:

 1. The difference between the amount paid in **damages** to the **insured per-**

**son** by and for any person or organization who may be legally liable for the **bodily injury,** and the limit of UNDERinsured Motorist Coverage; [This underlined portion is hereinafter referred to in this opinion as the "limitation of liability clause"]; or

 2. The amount of **damages** established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the **bodily injury**.

b. We will pay up to the limits of liability shown in the schedule below as shown in the Declarations. . . .

. . . .

### Additional Definitions Used In This Part Only

. . . .

c. **Underinsured Motor Vehicle**—means a land motor vehicle when:

 1. the ownership, maintenance or use is insured or bonded for **bodily injury** liability at the time of the **accident;** and

 2. its limit for **bodily injury** liability is less than the amount of the **insured persons damages.**

. . . .

### Other Insurance

. . . .

 2. The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by the amount of any other **bodily injury** coverage available to any party held to be liable for the **accident** [This underlined portion is hereinafter referred to in this opinion as the "setoff provision"].

. . . .

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

(Emphasis added). Under Talbot's policy, the maximum limits of her UIM coverage were $25,000 per person/$50,000 per occurrence.

Talbot entered into a settlement agreement with Shield and his insurer, Allstate,

for the amount of $50,000, which was Shield's limit of liability under Allstate's policy. Because Talbot's damages exceeded $50,000, Talbot made a claim for $25,000 of UIM benefits under her policy with Farmers. Farmers denied the claim based on its belief that the policy required a setoff of the amount paid by Shield against Talbot's maximum UIM limit of $25,000, resulting in no money owed to Talbot.

Farmers filed a Complaint for Declaratory Relief seeking a determination that the policy issued to Talbot did not obligate Farmers to pay Talbot UIM benefits. Talbot filed an Answer and Counterclaim in which she alleged a breach of contract and bad faith. She also sought class certification, claiming that the UIM coverage was illusory. Farmers moved for summary judgment on its claim for declaratory judgment, and Talbot filed a cross motion for partial summary judgment on the issue of her entitlement to payment of UIM benefits.

The district court granted Talbot's cross motion for partial summary judgment and denied Farmers' motion for summary judgment. The district court held that Talbot's policy was ambiguous because of the conflicting interpretation between the "Dear Policyholder" language and the limitation of liability and setoff provisions. Construing the ambiguity strongly against Farmers, the district court held that Farmers could not offset the amount Talbot received from Shield and that Talbot was entitled to UIM coverage for damages she incurred that are in excess of Shield's liability policy limits ($50,000), up to her UIM coverage limit of $25,000.

Following the district court's decision, the parties stipulated to a dismissal with prejudice of Talbot's remaining counterclaims, and the district court certified its Memorandum Decision and Order as final under I.R.C.P. 54(b). Farmers filed a timely appeal, challenging the district court's determination that the policy for UIM coverage is ambiguous.

## II.

## STANDARD OF REVIEW

When this Court reviews the district court's ruling on a motion for summary judgment, it employs the same standard properly employed by the district court when originally ruling on the motion. *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 718, 918 P.2d 583, 587 (1996); *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 200, 899 P.2d 411, 413 (1995). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Mutual of Enumclaw v. Box*, 127 Idaho 851, 852, 908 P.2d 153, 154 (1995). Normally, both this Court and the district court will liberally construe the record in favor of the party opposing the motion for summary judgment, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *City of Chubbuck*, 127 Idaho at 200, 899 P.2d at 413. However,

> [w]here, as in this case, both parties file motions for summary judgment relying on the same facts, issues and theories, the parties essentially stipulate that there is no genuine issue of material fact which would preclude the district court from entering summary judgment. As the trier of fact, the district court is free to arrive at the most probable inferences based upon the evidence before it and grant summary judgment, despite the possibility of conflicting inferences. As the trier of fact, the district court is responsible for resolving the possible conflict between inferences.

*Brown v. Perkins*, 129 Idaho 189, 191–92, 923 P.2d 434, 436–37 (1996) (citations omitted). "When questions of law are presented, this Court exercises free review and is not bound by findings of the district court, but is free to draw its own conclusions from the evidence presented." *Box*, 127 Idaho at 852, 908 P.2d at 154.

## III.

## THE ENDORSEMENT CONTAINING UIM COVERAGE IS AMBIGUOUS AND IS STRONGLY CONSTRUED AGAINST THE INSURER

The sole issue before this Court is whether the district court erred by determin-

ing that Talbot's policy concerning UIM coverage is ambiguous. The general rule is that, because insurance contracts are adhesion contracts, typically not subject to negotiation between the parties, any ambiguity that exists in the contract "must be construed most strongly against the insurer." *Mutual of Enumclaw Ins. Co. v. Roberts,* 128 Idaho 232, 235, 912 P.2d 119, 122 (1996). The question of whether a policy is ambiguous is a question of law over which this Court exercises free review. *Baker v. Farm Bureau Mut. Ins. Co. of Idaho, Inc.,* 130 Idaho 415, 416–17, 941 P.2d 1316, 1317–18 (Ct. App. 1997). "To determine whether a policy is ambiguous, the Court must ask whether the policy 'is reasonably subject to conflicting interpretation.'" *Box,* 127 Idaho at 853, 908 P.2d at 155. (quoting *City of Boise v. Planet Ins. Co.,* 126 Idaho 51, 55, 878 P.2d 750, 754 (1994)).

The district court concluded that the "Dear Policyholder" language was part of the UIM endorsement. It then concluded that there was a conflicting interpretation between the "Dear Policyholder" language and the limitation of liability and setoff provisions, thus, making the endorsement ambiguous. This Court agrees that the "Dear Policyholder" language is part of the endorsement for UIM coverage and that there is a conflicting interpretation between the "Dear Policyholder" language and the limitation of liability clause which makes the endorsement ambiguous. However, the setoff provision, which is located under the section entitled, "Other Insurance," does not apply to the facts of this case, and, therefore, has no bearing on the Court's ambiguity analysis. *Cf. Sublimity Insurance Co. v. Shaw,* 127 Idaho 707, 905 P.2d 640 (1995) (utilizing applicable rationale).

### A. The setoff provision does not apply to this case.

■ In *Shaw,* the insured argued that a clause found under a section entitled "OTHER INSURANCE" conflicted with the limitation of liability clause found in the portion of his policy concerning UIM coverage. 127 Idaho at 708, 905 P.2d at 641. The Court in *Shaw* determined that the OTHER INSURANCE clause did not apply in that particular circumstance because the OTHER INSURANCE clause referred only to situations where there is other UIM coverage. Because there was no other UIM coverage in that case, the Court held that the OTHER INSURANCE clause was inapplicable and, therefore, there was no resulting ambiguity. *Id.*

In the present action, the setoff provision in Talbot's policy is found in the "Other Insurance" section which reads: "The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by the amount of any *other* **bodily injury** coverage available to any party held to be liable for the **accident**." (Italicized emphasis added). The other provisions found under the "Other Insurance" section in Talbot's policy are similar to the provisions found in the OTHER INSURANCE section of the policy in *Shaw.* The setoff provision in Talbot's policy refers only to situations where there is other UIM coverage. Because there is no other UIM coverage at issue in the present case, the setoff provision is inapplicable and will not be considered by this Court in its analysis.

### B. The "Dear Policyholder" language is a part of the contract for UIM coverage.

■ Whether language in a "Dear Policyholder" notice may be considered part of the contract for insurance is a question of first impression in Idaho. Several other states have either addressed this specific issue or a related issue. Those jurisdictions which have addressed whether separate documents are a part of a contract for insurance focus upon: (1) whether the document is physically attached to the policy, (2) whether the policy specifically refers to the document, (3) whether the document amends, alters or changes any of the terms and conditions in the policy. *See Shunga Plaza, Inc. v. American Employers' Ins. Co.,* 206 Kan. 16, 476 P.2d 642, 644–45 (1970) (cover letter which accompanies an endorsement which is to be attached to insurance policy and which deletes one item of property will control as to the time and conditions of payment of the return premium and the necessity for confir-

mation of cancellation by insurer where the endorsement is silent on such matters); *Thompson v. Harold Thompson Trucking*, 12 Kan.App.2d 449, 748 P.2d 430, 433 (1987) ("Unless specifically included by reference, the declarations page to an insurance contract is not an actual part of the contract."); 2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 18:23 (1995) ("Separate documents may become a part of a contract of insurance by law, by being annexed or attached to the policy, or by a clear reference in the policy that they are intended to be a part thereof."). *See also Brown v. Financial Serv. Corp., Int'l*, 489 F.2d 144, 149–50 (5th Cir. 1974) (cover letter should have been considered as part of the parties' stock purchase agreement where the cover letter: (1) summarized in writing the content of a telephone conversation concerning the purchase agreement, (2) specifically discussed and modified certain terms of the purchase agreement, and (3) accompanied and served as a cover to the signed purchase agreement); *Richardson Eng'g Co. v. International Bus. Mach. Corp.*, 554 F.Supp. 467, 470 (D.Vt.1981) (where cover letter sent by subcontractor to general contractor along with executed subcontract in some respects attempted to modify subcontract that it accompanied, subcontract was not complete integration of parties' understanding and consideration of cover letter did not, therefore, violate parol evidence rule).

Colorado has addressed the specific question of whether language in a "Dear Policyholder" notice constitutes part of the insurance contract. *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550 (Colo. Ct. App. 1998). In that case, the Colorado Court of Appeals concluded that the following "policyholder notice" did not constitute part of the insurance contract:

POLICYHOLDER NOTICE

ADDED PERSONAL INJURY

PROTECTION

Your automobile policy has been renewed with the same Personal Injury Protection

(PIP) work loss benefit amounts as last year. However, a recent language interpretation of the Colorado Revised Statute Section 10–4–710(2)(a) provides that Added Personal Injury Protection (PIP) benefits shall be offered "at the option of the insured." You therefore have the option to choose any or all of the three Added Personal Injury Protection benefits as desired:

. . . .

If you desire to change your Personal Injury Protection benefit coverage or you need more information, please contact your agent.

*Id.* at 554–55. The Colorado Court of Appeals recognized that

this document ... [was] not an endorsement. Unlike the other attachments to the policy which [were] referred to as "endorsements," it plainly·is entitled "policyholder notice." Furthermore, its specific language does not *alter* the policy. To the contrary, it requires the insured to contact a Farmers agent in order to change coverage.

*Id.* at 555 (emphasis added).

Unlike the policyholder notice in *Brennan*, the language in the policyholder notice in the instant matter appears to alter or modify the endorsement with respect to how UIM benefits are measured. The limitation of liability clause in the endorsement provides that UIM benefits are measured in terms of "[t]he difference between the amount paid in **damages** to the **insured person** by ... any person ... legally liable for the **bodily injury**, and the limit of UNDERinsured Motorist Coverage." Under this clause, the calculation is $25,000 (Talbot's UIM limit) minus $50,000 (amount received from Shields), which leaves negative $25,000. The "Dear Policyholder" language, on the other hand, measures UIM benefits in terms of "the difference of the total amount paid by [the other] driver's liability insurance and the amount of [the insured's] damages, up to the limits of the coverage." Under this clause, the calculation is at least $75,000 (the total amount of Talbot's damages)[1] minus $50,000

---

1. Although it is unclear from the record the exact extent of Talbot's total damages, it is undisputed that her damages were at least $75,000.

(amount received from Shields), which leaves $25,000 (Talbot's maximum UIM limit) due and owing.

■ The policyholder notice in the present case does not contain a designation that it is simply a notice, instead "it explains what UIM coverage the insured has, as well as the uninsured motorist [UM] coverage, and states that the limits of the UIM and UM coverage are the same." Generally, if an insurer does not wish for a particular document to become part of the insurance contract, "the insurer should make it clear that it is provided for informational purposes only and that its contents are not intended to amend, alter or change any of the terms and conditions of the policy." 2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 18:23, cmt. (1995). No such language is found in this policyholder notice. As the district court noted, a reasonable person would deem the policyholder notice as part of the contract for UIM coverage and not just a mere cover letter.

■ Farmers interprets Talbot's legal argument as one based upon the "doctrine of reasonable expectations." Because Idaho does not recognize the doctrine of reasonable expectations, Farmers argues that Talbot's argument must fail. Farmers' argument is misplaced.

The doctrine of reasonable expectations (also known as the doctrine of adhesion contracts) is based on the understanding that insurance contracts are adhesion contracts, and because they are adhesion contracts, the court will construe the contract as providing the type of coverage the insured reasonably expected the contract to provide, regardless of whether the contract in fact provides such coverage. See Corgatelli v. Globe Life & Accident Ins. Co., 96 Idaho 616, 619, 533 P.2d 737, 740 (1975), overruled by Casey v. Highlands Ins. Co., 100 Idaho 505, 600 P.2d 1387 (1979). According to the Court in Corgatelli, the doctrine of reasonable expectations applied regardless of whether or not ambiguity was present in the insurance contract. 96 Idaho at 620, 533 P.2d at 741. In Casey v. Highlands Insurance Co., 100 Idaho 505, 509, 600 P.2d 1387, 1391 (1979), this Court

expressly rejected the doctrine of reasonable expectations in favor of traditional rules of contract construction. See Foremost Ins. Co. v. Putzier, 100 Idaho 883, 888, 606 P.2d 987, 992 (1980). Following Casey, Idaho courts may only consider an insured's reasonable understandings after it has been determined that the insurance contract is ambiguous. See Foremost Ins. Co. v. Putzier, 102 Idaho 138, 142, 627 P.2d 317, 321 (1981) ("[I]n the case of ambiguously written insurance policies, to effectuate the intent of the parties, the test is what a reasonable person in the position of the insured would have understood the language of the contract to mean."). The question in this case is, what documents constitute the insurance contract? This Court is free to consider Talbot's reasonable understandings in determining whether the policyholder notice should be treated as part of the insurance contract.

The Court concludes that the "Dear Policyholder" language is a part of the contract for UIM coverage on the bases that: (1) the "Dear Policyholder" language alters or modifies the limiting language in the UIM endorsement, and (2) the "Dear Policyholder" language contains no designation that the document is a cover letter provided for informational purposes only and is not intended to alter or amend the terms of the policy. Based on these factors, it was reasonable for Talbot to assume that the "Dear Policyholder" language was a part of the contract for UIM coverage.

The next question the Court must resolve is whether the conflict between the "Dear Policyholder" language and the limitation of liability clause creates an ambiguity within the policy such that the policy should be strongly construed against Farmers.

## C. The conflicting interpretation between the "Dear Policyholder" language and the limitation of liability clause makes the policy ambiguous.

■ Farmers argues that even if the "Dear Policyholder" language is considered a part of the contract, the fact that that lan-

guage conflicts with the limitation of liability clause does not make the policy ambiguous. Relying on *Meckert v. Transamerica Insurance Co.*, 108 Idaho 597, 701 P.2d 217 (1985), Farmers contends that as long as a clause which limits the insurer's liability contains clear and unambiguous language, the limitations clause is enforceable, irrespective of whether the limitations clause conflicts with other language in the policy. Farmers reads *Meckert* to mean that a court can only refuse to enforce a limitations clause if either: (1) the clause violates public policy, or (2) the language in the clause itself is not clear. Since there are no public policy considerations associated with UIM coverage, *see Farmers Insurance Co. of Idaho v. Buffa*, 119 Idaho 345, 347, 806 P.2d 438, 440 (1991), and the language of the limitation of liability clause in Talbot's policy is clear and unambiguous, Farmers claims that this Court is compelled to enforce the limitation of liability clause as written.

Farmers' argument applying the *Meckert* rule to the facts of this case is misplaced. *Meckert* stands for the proposition that a limitations clause in an insurance contract is valid and enforceable even if it conflicts with other provisions in the contract which grant coverage. The policy in *Meckert* provided that the insurer would "pay damages which a covered person is legally entitled to recover from the owner ... of an underinsured motor vehicle because of bodily injury sustained by a covered person and caused by an accident" (coverage-granting clause), but then excluded UIM coverage if the insured was injured while driving a motor vehicle not covered under the policy (limitations clause). 108 Idaho at 599, 701 P.2d at 219 (emphasis deleted). The *Meckert* court found no ambiguity between the granting clause and the limitations clause. It held:

> An insurance carrier has the right to limit its coverage of risk and its liability, and in so doing may impose conditions and restrictions upon its contractual obligations which are not inconsistent with public policy.
>
> . . . .

[A]n insurer must use clear and precise language if it wishes to restrict the scope of its coverage. We hold that [the insurer] has met its burden of clarity and precision. In the absence of ambiguity, the words used in an insurance policy are to be given their plain, ordinary and popular meaning.

*Id.* at 600–01, 701 P.2d at 220–21 (citations omitted).

In the present case, the provisions at issue are not a granting clause and a limitations clause. Unlike *Meckert*, the provisions at issue in this case (*i.e.*, the "Dear Policyholder" language and the limitation of liability clause) are each limitations clauses. The "Dear Policyholder" language attempts to limit Talbot's UIM coverage in one manner, while the limitation of liability clause attempts to limit Talbot's UIM coverage in a different manner. Because the provisions attempt to limit Talbot's UIM coverage in two different ways, ambiguity exists. Because ambiguity exists, the traditional rule of construction applies—*i.e.*, the insurance contract must be construed strongly against the insurer. *Roberts*, 128 Idaho at 235, 912 P.2d at 122. Contrary to Farmers' argument, *Meckert* does not change the traditional rule of construction that where ambiguity exists in an insurance contract, the ambiguity should be construed strongly against the insurer.

Farmers' reliance on other Idaho cases wherein this Court upheld an insurer's right to set off the amount received from a tortfeasor's insurance company against the insured's UIM limits is also misplaced. The insurance policies at issue in those particular cases did not contain the "Dear Policyholder" language which is present in the instant case. The presence of the "Dear Policyholder" language is what makes the policy in this case ambiguous; thus, this case is distinguishable from the other Idaho cases relied upon by Farmers.

This Court affirms the district court's determination that the policy is ambiguous and that, as a matter of law, Talbot is entitled to summary judgment.

## IV.

### CONCLUSION

The district court's decision to grant summary judgment in favor of Talbot and against Farmers is affirmed. Neither party is entitled to an award of attorney fees on appeal. Costs are awarded to Talbot.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL concur.