Justice BURDICK,
specially concurring.
Because of the clear language of the Household Exclusion in the Umbrella Policy and the fact that Stacy’s claim is clearly excluded by its terms, her claim must be denied. However, were Stacy not a member of the household, I would be inclined to hold otherwise. The language in the policy is difficult to decipher. On the one hand, the Umbrella Policy appears to grant broad coverage, extending the liability protection provided under the underlying policy. Most reasonable insurance buyers would expect, based on the coverage provisions of the Umbrella Policy, that they would have protection on the same terms and conditions as provided in the underlying policy. However, the numerous exclusions tend to militate to the contrary. Ambiguous language in the exclusions may make for spirited debate between lawyers on opposing sides of the coverage controversy but such language makes it difficult for the average consumer of insurance to successfully navigate the nuances prior to an accident. In such instances, the Court has historically sided with the insured. Although it was not necessary to consider Exclusion 8 and the Permissive Driver Exclusion in reaching a determination of this case, I believe it worthwhile to briefly consider how those exclusions, and the interplay between them, may have dictated a different result had Stacy not been a member of the household.
Appellants argue that Exclusion 8 in the Umbrella Policy recognizes coverage for bodily injury claims covered by the Squire Policy and expands upon that coverage. Farm Bureau asserts, and the distinct court held, that Exclusion 8 is strictly a limitation of the coverage available under the Umbrella Policy. The exclusion provides:
We do not cover:
8. Bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any motor *825 vehicle unless covered by valid and collectible underlying insurance described in the Declarations, and then only to the extent such injury or damages are covered by such policy
The first phrase of this exclusion, read in isolation, excludes all coverage for automobile-related injuries. “We do not cover ... [bjodily injury ... arising out of the ownership, maintenance, use or entrustment to others of any motor vehicle ...” Thus, under the first phrase, it is rather clear that the Umbrella Policy would not provide coverage for automobile accidents. However, the second phrase of Exclusion 8 specifically excepts from the exclusion claims for bodily injury that are covered by a valid, collectible and declared underlying policy. Here, the Squire Policy was valid and collectible and specifically identified in the Umbrella Policy declarations. Thus, the broad grant of coverage initially provided in the Umbrella Policy does include coverage for injuries sustained in an automobile accident. The third phrase of Exclusion 8 — “and then only to the extent such injury or damages are covered by such policy” — is enigmatic, at best.
The third phrase of Exclusion 8 does not lend itself to a single reasonable interpretation and is, therefore, ambiguous. A first interpretation is that, even if the exception to the exclusion applies because there is valid and collectible underlying insurance, any coverage is limited to that which is available pursuant to the underlying policy. This interpretation focuses on the language, “then only to the extent such ... damages are covered” by the underlying policy. To this end, Exclusion 8 merely recognizes that motor vehicle claims covered by underlying insurance are limited to the extent of that coverage. Thus, even if the Umbrella Policy applies, because a claim is covered by the Squire Policy, the latter policy provides the full extent of coverage. The problem with this interpretation is that the second and third phrases of the exclusion are rendered mere surplusage. If the intent of the Umbrella Policy was to exclude all coverage for automobile-related claims, why even tack on these two additional phrases? To accomplish that end, all the policy drafter had to do was place a period after “motor vehicle.” Further, the second phrase clearly provides coverage for automobile-related injury or damages and to contend that damages are limited to those available under the Squire Policy renders any coverage under the Umbrella Policy illusory.
A second interpretation is that, while the Umbrella Policy does provide coverage for automobile-related injuries or damages where there is a declared underlying policy, coverage under the Umbrella Policy is limited “to the extent” provided in the underlying policy. The third phrase means, in essence, that the Umbrella Policy covers injury and damages to the extent the same are covered under the Squire Policy. Under this interpretation, all phrases of the exclusion are given meaning. Thus, the Umbrella Policy would provide coverage under the same terms and conditions as the Squire Policy, including the $500,000 limit of that policy. The $1,000,000 limit of the Umbrella Policy would not apply.
Yet another interpretation, and the One proffered to by Farm Bureau’s counsel during oral argument before this Court, is that when a claimant meets the condition of coverage by having a declared underlying policy, the claim will be covered to the full limits of the Umbrella Policy, so long as the claim falls within the coverage grant of the Umbrella Policy and is not otherwise excluded. Thus, Stacy would be entitled to the $500,000 limit under the Squire Policy, as well as the $1,000,000 limit available under the Umbrella Policy, so long as the claim is within the coverage grant of the Umbrella Policy and not prohibited by other exclusions. This interpretation would provide coverage for injury and damages under comparable conditions as the Squire Policy, except that the limits of coverage would be those specifically stated on the declaration sheet of the Umbrella Policy. This makes sense because Exclusion 8 speaks of injury or damages but makes no mention of limits.
Because Exclusion 8 “is reasonably subject to conflicting interpretations,” it is ambiguous. Cherry, 146 Idaho at 884, 204 P.3d at 524. Furthermore, because the Umbrella Policy is a contract of adhesion and is not *826 subject to negotiation between the parties, the ambiguity must be construed strongly against Farm Bureau and in favor of coverage. See Kinsey, 149 Idaho at 419, 234 P.3d at 743. The most favorable interpretation, and the one that makes the most sense based on the policy language, is that the Umbrella Policy provides the same liability coverage as the Squire Policy but that the terms “injury or damages” do not include the liability limits specifically stated in the declaration sheet of the Umbrella Policy. Thus, additional coverage is dictated by the terms of the Umbrella Policy up to its $1,000,000 liability limit, unless the Permissive Driver Exclusion dictates otherwise.
Considering Exclusion 8 as a savings clause, what is its effect on the Permissive Driver Exclusion? The latter provision states:
We do not cover:
9. A permissive driver. If state law requires that this policy apply to a permissive driver, however, our applicable limit of liability for an occurrence shall be reduced (see Part V Limit of Liability). This exclusion does not apply if the permissive driver is your employee;
Appellants contend that this exclusion is in conflict with Exclusion 8. They point out that Stacy’s claim was covered under the Squire Policy, that Exclusion 8 is properly interpreted to extend the same coverage under the terms of the Umbrella Policy, and that the Permissive Driver Exclusion conflicts with Exclusion 8. They further assert that Exclusion 8 is reasonably read to provide coverage for liability resulting from “entrustment [of a motor vehicle] to others” when there is valid and collectible underlying insurance. They assert that the coverage in Exclusion 8 for entrustment to others is broader than the exclusion for permissive drivers and that anyone to whom an automobile is entrusted will by definition be a permissive driver. They argue that application of the Permissive Driver Exclusion would make meaningless the Exclusion 8 language regarding entrustment to others. Thus, the coverage provided by the Umbrella Policy via the exception to the exclusion in Exclusion 8 would be rendered illusory. On the other hand, Farm Bureau argues, first, that Exclusion 8 is not a savings clause and, second, that the Permissive Driver Exclusion operates separately and independently of Exclusion 8. Based on its determination that Exclusion 8 was unambiguous in limiting the scope of coverage under the Umbrella Policy, the district court held that the Permissive Driver Exclusion prohibited coverage under the policy. I believe the district court erred in so holding.
The Permissive Driver Exclusion is a restrictive clause and must be construed narrowly. As we recently stated in Kinsey, “Following the general tenets of insurance contract interpretation, terms are given their broad meaning in cases involving the extension of liability coverage and are construed narrowly in those cases involving exclusion from coverage.” 149 Idaho at 419, 234 P.3d at 743 (quoting 9A Steven Plitt, et al., Couch on Insurance § 128:6 (3d ed. 2009)). An insurer must use clear and precise language if it wishes to restrict its coverage. Fanners Ins. Co. of Idaho v. Talbot, 133 Idaho 428, 435, 987 P.2d 1043, 1050 (1999). When confronted with ambiguous, unclear, or conflicting provisions in an insurance policy, we should not consider how a clever insurance expert might construe them but, rather, we should determine what a reasonable person would understand the language to mean. Id. Further, where two provisions of an insurance policy attempt to limit coverage in different ways, ambiguity exists and “[b]e-cause ambiguity exists, the traditional rule of construction applies — i.e. the insurance contract must be construed strongly against the insurer.” Id.
The Appellants’ argument regarding potential conflict between the entrustment language of Exclusion 8 and the Permissive Driver Exclusion is well taken. A reasonable insurance buyer may well believe that Exclusion 8 extends all coverage available under the underlying policy and conclude that the entrustment language supersedes the Permissive Driver Exclusion. However, even though the issue may be confusing to a lay person buying insurance, the legal concepts differ. A negligent entrustment claim and a *827 claim for imputed negligence are both forms of negligence, rendering the owner of a vehicle liable for the driver’s use of the vehicle. However, an entrustment claim is a direct negligence action against the owner of a vehicle for negligently entrusting the vehicle to another with knowledge of the driver’s poor driving habits. Olguin v. City of Burley, 119 Idaho 721, 724, 810 P.2d 255, 258 (1991) (“Negligent entrustment is nothing more than a particularized application of the general tort principles contained in the concept of negligence.”). However, under I.C. § 49-2417, an owner is liable for the negligence of the permissive driver because such negligence is imputed to the owner, not because the owner personally acted with negligence. “Under Idaho law, the owner of a motor vehicle is liable when any person using or operating the vehicle hvith the permission, expressed or implied, of the owner’ operates that vehicle negligently.” Oregon Mut. Ins. Co., 148 Idaho at 52, 218 P.3d at 396 (citing I.C. § 49-2417(1)).
Appellants’ better argument is that the language of Exclusion 8, which appears to grant the same coverage under the Umbrella Policy as is available under the Squire Policy, is in conflict with the Permissive Driver Exclusion. While Appellants argue it is the entrustment language in Exclusion 8 that creates tension with Exclusion 9, it is the “use” of the insured’s vehicle covered by Exclusion 8 that is undermined by the Permissive Driver Exclusion. Specifically, a permissive driver’s “use” of the insured’s vehicle is covered by Exclusion 8’s extension of the Squire Policy. Therefore, the attempt to prohibit all coverage of permissive drivers, excepting employee drivers, in the Permissive Driver Exclusion is in direct conflict with the broader grant of “use” coverage extended to the Umbrella Policy by the Squire Policy in Exclusion 8. Moreover, the Permissive Driver Exclusion does not specifically limit liability coverage in a situation where underlying motor vehicle insurance exists, while Exclusion 8 is specifically applicable where underlying motor vehicle insurance covers the claim at issue. Based upon the applicable tenets of insurance contract interpretation, we should narrowly construe the Permissive Driver Exclusion as limiting coverage under the Umbrella Policy only in the situation where there is no coverage pursuant to an underlying motor vehicle policy. Thus, had we reached the issue, which was fully argued by the parties, I would have held that the Permissive Driver Exclusion was not effective to deny coverage for Stacy’s claim.
Justice J. JONES concurs.