# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38703

| | | |
|---|---|---|
| FARM BUREAU MUTUAL INSURANCE COMPANY OF IDAHO, | ) ) ) | |
| Plaintiff-Counterdefendant-Appellant, | ) ) | Boise, June 2012 Term |
| v. | ) ) | 2012 Opinion No. 127 |
| MICHAEL JOHN EISENMAN, KATHRYN MARIE, individually and co-personal representatives of THE ESTATE OF PATRICIA EISENMAN, | ) ) ) ) ) | Filed: September 19, 2012

Stephen Kenyon, Clerk |
| Defendants-Counterclaimants- Respondents, | ) ) ) | |
| and | ) ) | |
| REBECCA L. MC GAVIN and PETER EISENMAN, individually, | ) ) ) | |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

The decision of the district court is <u>reversed</u> and the case is <u>remanded</u> for entry of a judgment in favor of Farm Bureau.

Saetrum Law Offices, Boise, for appellant. Rodney Saetrum argued.

Moore & Elia, LLP, Boise, for respondents. Michael Moore argued.

---

HORTON, Justice.

This appeal arises from a declaratory judgment action brought by Farm Bureau Mutual Insurance Company of Idaho (Farm Bureau). Farm Bureau commenced the action in response to a claim for insurance benefits filed by the personal representatives of the estate of a deceased policyholder (the Estate). Farm Bureau requested a judgment declaring that the Estate is not an

1

"insured" under the decedent's insurance policy (the Policy) and is therefore not entitled to payment of wrongful death damages under the Policy's underinsured motorist coverage.

The district court granted the Estate's motion for summary judgment, determining that Idaho's wrongful death statute, I.C. § 5-311, entitles the insured's Estate to recover damages for wrongful death and that the Policy provided coverage for those damages. Farm Bureau timely appealed. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Farm Bureau sold Patricia Eisenman an insurance policy that provided coverage up to $500,000 for damages caused by an underinsured motorist. While crossing a Boise street on November 30, 2007, Eisenman was struck and killed by a car driven by a drunk driver. The driver's insurance carrier paid the Estate $50,000, which was the limit of the policy's liability coverage. Because the liability limit of the driver's policy was less than Eisenman's underinsured motorist coverage limit, the driver is an underinsured motorist within the definition in Eisenman's policy.

Eisenman is survived by four adult children: Michael Eisenman, Kathryn Marie, Rebecca McGavin, and Peter Eisenman (the Heirs). None of the Heirs were named as insureds on the Policy nor did any of the Heirs live with Eisenman at the time of her death. Michael Eisenman and Kathryn Marie were appointed to serve as personal representatives of the Estate. On April 28, 2010, the Estate submitted a proof of loss to Farm Bureau. Pursuant to the underinsured motorist provision, the Estate claimed medical and funeral expenses and sought payment of damages for wrongful death under I.C. § 5-311. Eisenman's policy provided accidental death coverage, and Farm Bureau paid that benefit to the Estate as well as $22,941.40 for the "special damages" listed in the proof of loss. However, Farm Bureau denied the claim for wrongful death damages.

Farm Bureau first filed an action for declaratory relief on May 26, 2010. Farm Bureau later amended the complaint and asked for a declaration that the Heirs and the Estate "are not insureds under [the Policy] and that they cannot recover underinsured motorist payments under the underinsured motorist coverage . . . ." The Estate and Heirs counterclaimed against Farm Bureau for breach of contract. The parties filed motions for summary judgment on the issue of whether the Estate or the Heirs are entitled to payment of wrongful death damages under the Policy's underinsured motorist coverage provisions. The district court denied Farm Bureau's

2

motion and granted summary judgment in favor of the Estate and Heirs. Farm Bureau timely appealed and asks this Court to vacate the district court's judgment and enter judgment in its favor.

## II. STANDARD OF REVIEW

This Court reviews appeals from an order of summary judgment *de novo* and uses the same standard the trial court uses in ruling on a motion for summary judgment. *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 394, 224 P.3d 458, 461 (2008) (citing *Lockheed Martin Corp. v. Idaho State Tax Comm'n,* 142 Idaho 790, 793, 134 P.3d 641, 644 (2006)). Under that standard, summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Additionally, we construe disputed facts in favor of the non-moving party, and draw all reasonable inferences from the record in favor of the non-moving party. *Curlee*, 148 Idaho at 394, 224 P.3d at 461. Where "the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Lockheed,* 142 Idaho at 793, 134 P.3d at 644.

This Court exercises free review over questions of statutory interpretation and application. *Flying Elk Inv., LLC v. Cornwall*, 149 Idaho 9, 15, 232 P.3d 330, 336 (2010) (citations omitted). On review, "[a]n unambiguous statute must be given its plain, usual, and ordinary meaning. Statutory provisions should not be read in isolation but instead are interpreted in the context of the entire document." *Id.* "A statute is ambiguous where the language is capable of more than one reasonable construction." *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 388, 398, 111 P.3d 73, 83 (2005) (quotation omitted), *rev'd on other grounds by Farber v. Idaho State Ins. Fund*, 152 Idaho 495, 272 P.3d 467 (2012). However, statutory language is not ambiguous "merely because the parties present differing interpretations to the court." *State v. Doe*, 140 Idaho 271, 274, 92 P.3d 521, 524 (2004) (citing *Matter of Permit No. 36–7200,* 121 Idaho 819, 823, 828 P.2d 848, 852 (1992)).

In interpreting an insurance policy, "where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used." *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 662, 115 P.3d 751, 753 (2005) (quoting *Clark v. Prudential Prop. & Cas. Ins. Co.,* 138 Idaho 538, 541, 66 P.3d

242, 245 (2003)). A policy is ambiguous if it "is reasonably subject to conflicting interpretations." *Cherry v. Coregis*, 146 Idaho 882, 884, 204 P.3d 522, 524 (2009) (citing *Farmers Ins. Co. of Idaho v. Talbot,* 133 Idaho 428, 432, 987 P.2d 1043, 1047 (1999)). We exercise free review in determining whether an insurance policy is ambiguous. *Arreguin v. Farmers Ins. Co. of Idaho*, 145 Idaho 459, 461, 180 P.3d 498, 500 (2008) (citing *Talbot,* 133 Idaho at 432, 987 P.2d at 1047).

## III. ANALYSIS

**A. Eisenman's underinsured motorist coverage does not extend to heirs that are not insureds merely because the Estate is entitled to bring a wrongful death action on behalf of the heirs.**

The Estate argues that it holds all contract rights the decedent held before her death and that it is legally entitled to recover damages for Eisenman's death under Idaho's wrongful death statute, Idaho Code § 5-311. Therefore, it argues, the Estate is entitled to payment of those damages pursuant to the underinsured motorist provision in the Policy, which provides that Farm Bureau will pay damages that an insured, as defined by the Policy, is legally entitled to recover.

The personal representative of an estate is "a fiduciary," who is "under a duty to settle and distribute the estate of the decedent . . . ." I.C. § 15-3-703(a). However, as we explained in *Whitley v. Spokane & Inland Railway Company*, the personal representative's role in the context of wrongful death actions is only "as trustee for the heirs." 23 Idaho 642, 659, 132 P. 121, 126 (1913), *aff'd sub nom. Spokane & I.E.R. Co. v. Whitley*, 237 U.S. 487 (1915). Along with these duties, a personal representative may "[e]xercise the same power as the decedent in performance, compromise or refusal to perform the decedent's contracts which continue as obligations of the decedent's estate." I.C. § 15-3-715(3). Idaho Code further provides that:

> *Except as to proceedings which do not survive the death of the decedent*, a personal representative of a decedent domiciled in this state at his death has the same standing to sue and be sued in the courts of this state and the courts of any other jurisdiction as his decedent had immediately prior to death.

I.C. § 15-3-703(c) (emphasis added). Thus, while the personal representative "steps into the shoes" of the decedent to administer the estate, and may sue on causes of action the decedent may have pursued, the personal representative may not bring an action that abated upon the death of the decedent.

Any damages an estate recovers in an action for the wrongful death of the decedent inure solely to the benefit of the heirs. Claims for pain and suffering abate upon the death of the

4

injured person. *Evans v. Twin Falls Cnty.*, 118 Idaho 210, 216, 796 P.2d 87, 93 (1990) (quoting *Vulk v. Haley,* 112 Idaho 855, 859, 736 P.2d 1309, 1313 (1987)). However, the heirs of a person who has been killed by a tortfeasor have a separate cause of action against the tortfeasor under Idaho's wrongful death statute:

> When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives *on their behalf* may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer, against the personal representative of such wrongdoer, whether the wrongdoer dies before or after the death of the person injured.

I.C. § 5-311(1) (emphasis added). A wrongful death claim is "an entirely new cause of action . . . ." *Castorena v. Gen. Elec.*, 149 Idaho 609, 616, 238 P.3d 209, 216 (2010). This cause of action is "entirely distinct from any action the decedent may have brought on her own behalf, prior to her death . . . ." *Id.* at 619, 238 P.3d at 219 (citing *Russell v. Cox,* 65 Idaho 534, 529, 148 P.2d 221, 223 (1944)). Further, we have held that a judgment granted in a wrongful death action "inures to the benefit of the heirs of the decedent and in no case becomes a part of the assets of the estate of the deceased." *Whitley*, 23 Idaho at 659, 132 P. at 126; *see also Moon v. Bullock*, 65 Idaho 594, 605, 151 P.2d 765, 770 (1944) (holding that "no right of action is given to the estate of the victim of a tort, but is granted only to his heirs . . . [i]f there are no heirs, no right of action vests in anybody."), *overruled on other grounds by Doggett v. Boiler Eng'g & Supply Co., Inc.,* 93 Idaho 888, 477 P.2d 511 (1970); *Russell*, 65 Idaho at 534, 148 P.2d at 223 (holding that the cause of action created by I.C. § 5-311 "does not benefit the estate."), *superseded in part by statute*, I.C. § 5-327. Thus, a decedent's estate is not legally entitled to recover damages for the decedent's wrongful death; only the decedent's heirs may recover those damages, either through an action brought by the heirs themselves or through an action brought by the estate on behalf of the heirs.

In this case, while the Estate may pursue a wrongful death claim on behalf of the Heirs, the underinsured motorist coverage does not extend to the Heirs or the Estate because they are not insureds under the Policy. The Policy language governing the coverage for injuries caused by underinsured motorists provides that "[Farm Bureau] will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** sustained by an **insured** . . . ." (emphasis original). Under the plain language of the Policy, the underinsured motorist provision only pays damages to which an insured is entitled. The Heirs concede that they are not insureds as defined in the Policy. Because

Eisenman's own cause of action against the underinsured motorist in this case abated upon her death, we hold that the Heirs are not entitled to payment for wrongful death pursuant to the underinsured motorist coverage.

As to the Estate, it is true that it assumed Eisenman's contractual rights and obligations, along with the right to enforce any causes of action that Eisenman may have possessed. However, under the plain language of the wrongful death statute, the Estate is not legally entitled to recover damages for itself, but only to bring an action on behalf of the heirs to recover their damages. As explained in *Whitley*, the Estate—as a fiduciary or agent of the Heirs—does not have a separate legal interest in the judgment. Consequently, we hold that the Estate is not legally entitled to recover underinsured motorist benefits under the Policy for Eisenman's wrongful death.

**B. Farm Bureau's arguments are not barred by any doctrine of estoppel.**

The Estate also contends that Farm Bureau should be estopped from arguing that Farm Bureau has never paid damages to the Estate pursuant to the underinsured motorist provision and that the provision does not contain a promise to pay damages to the Estate. We hold that no estoppel theory applies in this case.

The Estate has not favored this Court with any citations to authority regarding its argument for estoppel. However, considering the Estate's framing of the issue, the only estoppel doctrine that might apply is quasi-estoppel. Generally, quasi-estoppel applies to situations wherein "it would be unconscionable to allow a party to assert a right that is inconsistent with a prior position. *Sagewillow, Inc. v. Idaho Dep't of Water Res.*, 138 Idaho 831, 845, 70 P.3d 669, 683 (2003) (citing *Willig v. Idaho Dep't of Health & Welfare,* 127 Idaho 259, 899 P.2d 969 (1995)). More specifically, we have held that "[q]uasi-estoppel is properly invoked against a person asserting a claim inconsistent with a position previously taken by that person with knowledge of the facts and his or her rights, to the detriment of the person seeking application of the doctrine." *The Highlands, Inc. v. Hosac*, 130 Idaho 67, 70, 936 P.2d 1309, 1312 (1997) (citing *KTVB, Inc. v. Boise City,* 94 Idaho 279, 282, 486 P.2d 992, 995 (1971)). Usually, a party's failure to cite any authority for its position would result in the issue being waived. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (citations omitted) (holding that issues "not supported by propositions of law, authority, or argument . . ." are waived "if either authority or argument is lacking, not just if both are lacking."). But in this case, we take the opportunity to

make it clear that where an insurer pays some valid claims pursuant to a provision of a policy it issued, it is not thereby estopped from subsequently denying other claims that are not valid under the policy.

Pursuant to the Policy, Farm Bureau paid the Estate for Eisenman's hospital and funeral expenses and for an accidental death benefit. Because Eisenman herself was entitled both to the death benefit and to recover her hospital and funeral expenses, the Estate stepped into Eisenman's shoes for those claims, and Farm Bureau made those payments to the Estate. Farm Bureau's payment of these legitimate claims under the insurance contract does not constitute a change of position or an admission that coverage exists for other claims. We hold that these payments do not prevent Farm Bureau from arguing that it is not required to pay the Estate for damages that Eisenman was not legally entitled to recover.

**C. The Estate is not entitled to attorney fees pursuant to Idaho Code § 41-1839.**

The Estate argues that it is entitled to attorney fees pursuant to Idaho Code § 41-1839 because Farm Bureau failed to pay the wrongful death damages that were "justly due" within thirty days of receiving the Estate's proof of loss. Before an insured is "entitled to an award of attorney fees under this provision, the insured must prevail." *Arreguin v. Farmers Ins. Co. of Idaho*, 145 Idaho 459, 464, 180 P.3d 498, 503 (2008) (citing *Slaathaug v. Allstate Ins. Co.,* 132 Idaho 705, 711, 979 P.2d 107, 113 (1999)). Because the Estate is not the prevailing party on appeal, it is not entitled to attorney fees.

## IV. CONCLUSION

We reverse the judgment of the district court and remand this matter to the district court for entry of a judgment in favor of Farm Bureau. Costs to Farm Bureau.

Chief Justice BURDICK and Justice EISMANN **CONCUR**.

J. JONES, J., specially concurring.

I concur in the Court's opinion, including the conclusion that neither the Estate nor the Heirs can recover underinsured motorist benefits under the Policy based on a wrongful death claim. That does not mean, however, that a personal representative, acting on behalf of an insured decedent's estate, may not recover benefits contractually available under an insurance policy like that involved here.

Coverage P-1 of the Policy, the underinsured motorist provision, states:

7

> We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** sustained by an **insured** and caused by an **occurrence.**

This language states, without qualification or limitation, that Farm Bureau will pay damages that an insured is legally entitled to recover from an underinsured motorist because of bodily injury (defined as "physical injury or death") sustained by the insured in an accident (occurrence). Damages that an injured plaintiff is legally entitled to recover as a result of an accident are itemized in Idaho's pattern jury instructions (IDJI2d) and include pain and suffering, impairment of abilities, disfigurement, aggravation of preexisting conditions, necessary medical expenses, past and future earnings, and necessary services provided by others. IDJI 9.01. Those elements of damage certainly appear to be available to any insured under the Policy.

Nevertheless, Farm Bureau argues that "[u]nder Idaho law, any claim [Eisenman] had against the tortfeasor ended with her death," citing *Evans v. Twin Falls County*, 118 Idaho 210, 796 P.2d 87 (1990). Farm Bureau stretches the holding in that case a bit because the case dealt specifically with the abatement of a claim for "pain and suffering" upon a decedent's death. *Id.* at 216, 796 P.2d at 93. However, there is no language in the Policy stating that damages available under Coverage P-1 will not be paid if the insured dies. Indeed, this position is a bit difficult to reconcile with the contract language stating Farm Bureau will pay damages for the insured's bodily injury, which the Policy specifically defines as "physical injury or death to a person." Thus, the Policy clearly states that Farm Bureau "will pay damages which an insured is legally entitled to recover . . . because of [physical injury or death] sustained by an insured." Farm Bureau's promise to pay damages resulting from the death of the insured must mean something, perhaps that any legally recoverable damages that accrue under Coverage P-1 from the time of the occurrence to and including the death of the insured will be paid by Farm Bureau. Farm Bureau does know how to restrict its liability because Coverage P-1 goes on to specifically exclude from coverage "**bodily injury** for which a claim against the owner or driver of the . . . **underinsured motor vehicle** is barred by the applicable statute of limitations." However, there is no language in Coverage P-1 that limits the company's obligation to pay damages for the physical injury or death of the insured. Apparently, Farm Bureau takes the position that the common law rule of non-survival of causes of action must be read into every insurance contract,

8

regardless of whether the policy language may state or imply otherwise, and that parties to a contract may not agree to override the effect of a generally applicable rule of law.

While Farm Bureau's interpretation of Coverage P-1 may have some merit, it is more likely that a reasonable person would understand the language to mean that the insured is entitled to recover all damages available under IDJI 9.01 that began accruing and vesting under the Policy from the time of the accident. *See Farm Bureau Mut. Ins. Co. v. Schrock*, 150 Idaho 817, 821, 252 P.3d 98, 102 (2011) ("If confronted with ambiguous language, the reviewing court must determine what a reasonable person would understand the [insurance policy] language to mean.") "[W]here [insurance policy] language may be given two meanings, one of which permits recovery while the other does not, the policy should be given the construction most favorable to the insured." *Id.* Further, "Since ambiguous language is construed **in favor** of the **insured**, 'the burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage.'" *Mortensen v. Stewart Title Guaranty Co.*, 149 Idaho 437, 442, 235 P.3d 387, 392 (2010) (bolding in original) (citing *Arreguin v. Farmers Ins. Co.*, 145 Idaho 459, 461, 180 P.3d 498, 500 (2008)). Here, there is no contract language indicating that the unequivocal commitment to pay recoverable damages for physical injury or death is conditioned upon the insured's survival, that the insured is not entitled to all elements of damage that began accruing immediately upon the occurrence of the accident, or that the decision as to whether or not damages are payable will only be determined after the insured sues the tortfeasor and recovers during his or her lifetime. Farm Bureau could have placed such language in the Policy in order to make clear its claimed limitation of exposure, but it failed to do so.

Damages in an accident accrue from the instant the accident occurs. In this case medical expenses were required for Eisenman from the inception of the accident and accrued until her death several hours later. Her death was an insured bodily injury that necessitated the payment of funeral expenses. Although a specific provision of the Policy provided for payment of "reasonable and necessary medical and funeral expenses incurred within 3 years from the date of" the accident, Coverage P-1 would also require payment of such expenses. In this case the Estate's proof of loss does not include claims for pain and suffering or lost income, presumably because the insured died within hours of the accident. However, had the insured lingered on for weeks or months and sustained pain and suffering or loss of income, those elements of damage would also be recoverable under the Policy. Even though this Court has held that a claim for pain

9

and suffering abates upon a decedent's death (*Evans*, 118 Idaho at 216, 796 P.2d at 93), the Policy here allows for recovery of those damages, being damages an insured "is legally entitled to recover from the" underinsured motorist, at least until the pain and suffering ceases upon the insured's death. Similarly, lost income is an element of damage which an insured is legally entitled to recover. Although neither pain and suffering nor lost income is at issue in this case, our decision should not be read to preclude their recovery in an appropriate factual situation different from that involved here.

While I agree that neither the Estate nor the Heirs may recover wrongful death damages under the Policy, that does not mean that the Estate may not, standing in the shoes of the decedent, recover benefits contractually owing under the language of Coverage P-1. Under I.C. § 15-3-715(3), the personal representative steps into the shoes of the decedent with regard to the decedent's contracts. While a wrongful death action by the Estate or Heirs is a separate statutory claim, not based upon contract, a claim for underinsured motorists benefits is solely based on contract. However, in this case, since the insured decedent's medical and funeral expenses have already been paid and since no claim has been made for any other potentially recoverable elements of damage, the district court's holding is appropriately reversed.

W. JONES, J., specially concurring:

I join the majority's holding that the Estate cannot recover damages available under the wrongful death statute, I.C. § 5-311, such as loss of care, comfort, companionship, and society. *See generally Horner v. Sani-Top, Inc.*, 143 Idaho 230, 141 P.3d 1099 (2006) (discussing available damages). I further join the majority's holding that Respondents waived the estoppel issue by failing to cite authority or to argue the point. I write separately to highlight my reasons for reaching those conclusions.

The key to resolving this case is to differentiate between two types of indemnity: coverage that is defined solely by tort-law principles and coverage defined by contract, i.e. the Policy. "COVERAGE P-1—UNDERINSURED MOTORIST" falls into the first category. It provides: "We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** sustained by an **insured** and caused by an **occurrence.**"[1] In this case, tragically, Mrs. Eisenman died shortly after the

---

[1] Boldface words and phrases are defined in the Policy.

accident. At the moment she died, she lost not only her right to recover against the underinsured motorist in tort, *see Bishop v. Owens*, 152 Idaho 616, 272 P.3d 1247, 1250 (2012), but also the coterminous right to recover against Farm Bureau under Coverage P-1.

Farm Bureau could have worded Coverage P-1 differently to move it into the second category of indemnity. For example, it could have promised: "*In the event of the death of an insured*, we will pay damages *which, but for the death of the insured,* the insured would be legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured and caused by an occurrence." This phrasing would have extended Coverage P-1 to situations in which the insured died, notwithstanding the fact that she could not have recovered anything against the underinsured motorist; however, this is not the policy that Farm Bureau wrote and that Mrs. Eisenman purchased.

An example of the second category of indemnity that does appear in the Policy is "COVERAGE Q—MEDICAL PAYMENTS." It provides: "We will pay the reasonable and necessary medical and funeral expenses incurred within 3 years from the date of **occurrence** to each **insured** who sustains **bodily injury** caused by an **occurrence**." Similarly, under "SECTION III ENDORSEMENTS" Farm Bureau agreed "to pay $5,000 if an **insured** dies solely as a result of **bodily injury** caused by an **occurrence** while **occupying** or struck by a **motor vehicle**. Death of the **insured** must occur within 90 days after the date of the **occurrence**." Neither of these provisions is limited by what Mrs. Eisenman could have recovered in tort, and her death did not abate her contractual right to indemnification under them.

With this distinction in mind, it is clear that Farm Bureau's payment of medical and funeral expenses could not estop it from refusing to pay wrongful death damages, as Respondents argue. Upon Mrs. Eisenman's death, the sums due under Coverage Q were properly payable, whereas nothing was due under Coverage P-1.

Finally, I must note my disagreement in one respect with Justice Jim Jones' concurrence. He states: "had the insured lingered on for weeks or months and sustained pain and suffering or loss of income, those elements of damage would also be recoverable under the Policy." There is no basis for such a conclusion in the Policy. Coverage P-1 would have indemnified Mrs. Eisenman for these damages only if she survived until she won a judgment against the underinsured motorist. This is so because a judgment, unlike a mere tort chose in action, does not abate when the decedent dies, but instead remains enforceable by the decedent's estate

11

through her personal representative upon application. *See* I.C. § 11-106(1). Without a judgment against the underinsured motorist, we would not be at liberty to disregard the fact that Mrs. Eisenman's death extinguished her tort claims, regardless of whether she survived for a week, a month, or a year.

Justice Jim Jones omits the critical language of the Policy stating that Mrs. Eisenman can recover for what she could recover "from the owner or operator of an underinsured motor vehicle." As previously noted, Mrs. Eisenman could not recover anything from the owner or operator once she was dead. Mrs. Eisenman would have been entitled to recover those damages against the underinsured motorist *had she lived*, but once she died, that right disappeared because the only theory upon which she could recover any damages from the underinsured motorist is a tort theory and torts abate upon death. *Castorena v. Gen. Elec.*, 149 Idaho 609, 614, 238 P.3d 209, 214 (2010) (recognizing the generally accepted common law rule that "where a person was injured by the wrongful act or omission of another any right for civil relief ended with the injured party's death."); *Steele v. Kootenai Med. Ctr.*, 142 Idaho 919, 920, 136 P.3d 905, 906 (2006) (recognizing the Idaho Legislature has adopted the common law of England providing a personal injury action abates with the death of the victim); *Hayward v. Vally Vista Care Corp.*, 136 Idaho 342, 351 n.2, 33 P.3d 816, 825 n.2 (2001) ("[A]n action for personal injuries does not survive the death of the victim of the tort."); *Evans v. Twin Falls Cnty.*, 118 Idaho 210, 217, 796 P.2d 87, 94 (1990) ("[T]he common law has not been modified or changed in Idaho either by statute or the Constitution, and therefore the general common law rule that personal causes of action do not survive the death of the injured party is the rule in Idaho."); *Vulk v. Haley*, 112 Idaho 855, 858–59, 736 P.2dd 1309, 1312–13 (1987) (holding that pain and suffering does not survive the death of the injured); *Craig v. Gellings*, 148 Idaho 192, 219 P.3d 1208 (Ct. App. 2009) (affirming district court's order dismissing plaintiff's personal injury action on the ground her claims abated when she died during the pendency of the action). Mrs. Eisenman obviously had no contractual basis on which to recover any damages against the underinsured motorist. There is nothing in the Policy providing damages for pain and suffering or an insured's lost income after the death of the insured. As noted above, only reasonable and necessary medical and funeral expenses incurred within three years from the date of the accident and a death benefit of $5,000 are payable pursuant to the Policy because those damages are a matter of contract between the insured and the insurer.

The bottom line is that Coverage P-1 only provides for payment of damages Mrs. Eisenman could legally recover from the underinsured driver and it is clear that once she died she could not recover anything from him.