HORTON, Justice.
This appeal involves the interpretation of offset clauses contained in an underinsured motorist insurance (UIM) policy and the interrelationship of that policy and Idaho’s worker’s compensation laws. The district court granted summary judgment in favor of Respondent Tina Cherry (Cherry), holding that Appellant Coregis Insurance Company (Coregis) was not entitled to offset funds Cherry received from Farmers Insurance Company (Farmers) on behalf of a third-party tortfeasor because Cherry was required to pay those funds to the Idaho State Insurance Fund (the Fund) in order to satisfy the Fund’s statutory subrogation interest. Coregis timely appealed to this Court.
Although we disagree with the district court’s analysis and conclude that Coregis is entitled to offset the entire sum paid to Cherry by Farmers, we conclude that Coregis is entitled to an offset only for the net sum paid by the Fund to Cherry as worker’s compensation benefits. Accordingly, we affirm in part.
I. FACTUAL AND PROCEDURAL BACKGROUND
Cherry was injured in an automobile accident during the course and scope of her employment as a bus driver with the Snake River School District (the School District). The School District carried a policy through Coregis which provided UIM coverage with a policy limit of $250,000. The parties stipulated that Cherry incurred damages of at least $250,000. Coregis’ policy contains a “Limit of Insurance” provision that provides:
D. LIMIT OF INSURANCE
1. Regardless of the number of covered “autos”, “insureds”, premiums paid, claims made or vehicles involved in the “accident”, the most we will pay for all damages resulting from any one “accident” is the LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE [1] shown in the Declarations.
2. Any amount payable under this coverage shall be reduced by:
*884 a. All sums paid or payable under any workers’ compensation, disability benefits or similar law, and
b. All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form’s LIABILITY COVERAGE.
(Emphasis original.)
Following the accident, Cherry received $102,361.01 from the Fund on the condition, as provided in I.C. § 72-223(3), that she repay any money she might receive for the accident from a third-party tortfeasor. Cherry recovered the policy limits sum of $100,000 from the third-party tortfeasor’s insurance company, Farmers, and, after deducting her attorney fees and costs from that amount in accordance with I.C. § 72-223(4), Cherry repaid the Fund with the remaining $66,281.38.
Cherry then sued Coregis to recover under the UIM policy. After the action was filed, Coregis applied its interpretation of the set-off provisions set forth above, deducting $102,361.01 for worker’s compensation benefits (relying on section D(2)(a)) and $100,000 for the sum recovered from Farmers (relying on section D(2)(b)). Based upon the foregoing figures, Coregis paid Cherry $47,638.99. Coregis then moved the district court for summary judgment, arguing that Cherry was not entitled to any further payment under the terms of the UIM policy. The district court disagreed and granted summary judgment in favor of Cherry for $66,281.38. Cherry moved to alter and amend the order granting summary judgment, arguing that Coregis was not entitled to offset any portion of the $100,000 received from Farmers because Cherry was never actually compensated by that money. The district court agreed and awarded Cherry $100,000, with interest accruing from the date of the first order granting summary judgment. Coregis filed a timely notice of appeal.
II. STANDARD OF REVIEW
When this Court reviews the district court’s ruling on a motion for summary judgment, it employs the same standard properly employed by the district court when originally ruling on the motion. Farmers Ins. Co. of Idaho v. Talbot, 133 Idaho 428, 431, 987 P.2d 1043, 1046 (1999). Summary judgment is proper when there is no genuine issue of material fact and the only remaining questions are questions of law. Harwood v. Talbert, 136 Idaho 672, 677, 39 P.3d 612, 617 (2001); I.R.C.P. 56.
The question of whether an insurance policy is ambiguous is a question of law over which this Court exercises free review. To determine whether a policy is ambiguous, the Court must ask whether the policy is reasonably subject to conflicting interpretations. Talbot, 133 Idaho at 432, 987 P.2d at 1047. Any ambiguities should be resolved in favor of the insured, and where language may be given two meanings, one of which permits recovery while the other does not, the policy should be given the construction most favorable to the insured. Foremost Ins. Co. v. Putzier, 102 Idaho 138, 142, 627 P.2d 317, 321 (1981) (citations omitted).
III. ANALYSIS
There are no material facts in dispute. Rather, this appeal presents two issues of law. The primary issue relates to interpretation of the offset provisions in the insurance policy. The second issue is Cherry’s entitlement to an award of attorney fees on appeal. These issues will be discussed in turn.
A. Coregis is entitled to an offset only for the net sum of worker’s compensation benefits paid to Cherry.
The amount of the $250,000 policy limit to which Cherry is entitled after Coregis applies the offset provisions depends upon the interpretation of the policy in light of the fact that the worker’s compensation benefits received by Cherry were subject to the Fund’s statutory subrogation interest. When analyzing Coregis’ policy, the district court acknowledged that Farmers “paid [Cherry] the limit of its policy with [its insured tortfeasor] in the amount of $100,000.” Despite this statement, the district court granted summary judgment in favor of Cherry and ordered Coregis to pay her an additional $100,000 based upon its conclusion that the funds received by Cherry from Farmers *885 were not “paid” according to the meaning of that word as contained in section D(2)(b). We do not think this is a reasonable interpretation.[2]
The verb “pay,” of which the word “paid” is the past participle, is a word of common usage meaning “to give to (a person) what is due.” Webster’s New World Dictionary 1044 (2d College ed.1976). Farmers has given Cherry $100,000, which it has never recouped. From Farmers’ perspective, it has manifestly “paid” $100,000. The district court’s conclusion is only possible by an analysis that focuses on whether Cherry ultimately benefited from the payment, not on whether Farmers gave her the money to which she was entitled. In our view, this analysis results in a distortion of the word “paid” beyond recognition. For this reason, we vacate the district court’s order entered on Cherry’s motion to alter and amend.
In our view, the more appropriate approach is to evaluate whether money has been “paid” or is “payable” by examining the financial impact upon the party responsible for “payment.” When considering this matter from the perspective of the Fund, one may reasonably assert that the Fund paid one of two different sums: the gross sum of $102,361.01 or the net sum of $36,079.63 after accounting for its recovery of $66,281.38 from Cherry under the statutory subrogation provision of I.C. § 72-223(3).[3] Thus, the question is presented whether the phrase “[a]ll sums paid or payable” in the D(2)(a) offset provision refers to gross or net sums paid or payable as worker’s compensation benefits. This Court has not previously addressed this question.
In examining an issue of first impression, it is helpful to look at how other jurisdictions have answered the question. The facts of Wildman v. Nat’l Fire and Marine Ins. Co., 703 N.E.2d 683 (Ind.App.1998), are analogous to the facts in this case. Wildman was injured in an automobile accident while at work, and his employer carried an uninsured/underinsured motorist liability policy with dual offset provisions similar to the provisions in .the Coregis policy. Id. at 685. Wildman received funds from a worker’s compensation carrier, subject to a statutory lien, which he later repaid with money recovered from the responsible party’s insurance company. Id. at 684-85. Wildman argued that his employer’s insurer, National, should be able to “set-off only those worker’s compensation benefits Wildman actually retained, not the amount of benefits he received and then repaid to the worker’s compensation carrier” pursuant to the statutory lien. Id. at 685.
The setoff provision regarding worker’s compensation in the National policy stated: “Any amount payable under this coverage shall be reduced by all sums paid or payable under any worker’s compensation disability benefits or similar law.” Id. at 686. The court focused on the meaning of the phrase “sums paid or payable” in that provision and determined that:
Reasonable people reading this language may conclude that this phrase means the amount of worker’s compensation benefits originally received by the insured; equally reasonable people may determine that the reduction applies only to those benefits retained after subtraction of the compensation carrier’s statutory lien. Because reasonable people may disagree as to whether it includes worker’s compensation benefits received subject to a repayment obligation, we conclude that the reduction clause in National’s policy is ambiguous. We resolve this ambiguity by construing the language *886 in favor of the insured, Wildman, and against the insurer, National, and hold that National is entitled only to set-off the worker’s compensation benefits received which are not subject to a repayment obligation.
Id. at 687 (citing Meridian Mut. Ins. Co. v. Cox, 541 N.E.2d 959, 961 (Ind.App.1989) (ambiguous policy language strictly construed against insurer)). The offset provision regarding worker’s compensation in the Coregis policy is ambiguous for the same reasons outlined by the Wildman court, and in Idaho, as in Indiana, all ambiguities in an insurance policy are to be resolved against the insurer. Foremost Ins., 102 Idaho at 142, 627 P.2d at 321. We find the reasoning in Wildman to be persuasive and conclude that while Coregis’ obligation is reduced by the $100,000 paid by Farmers under section D(2)(b), Coregis’ obligation to Cherry is reduced only by the net amount of worker’s compensation benefits paid or payable to Cherry under section D(2)(a) — $36,079.63. Thus, Cherry is entitled to recover from Coregis an amount equal to the amount she paid to the Fund in order to satisfy the Fund’s statutory subrogation interest — $66,281.38.
We recognize that this conclusion is facially at odds with our previous holding in Am. Foreign Ins. Co. v. Reichert, 140 Idaho 394, 94 P.3d 699 (2004). In Reichert, we examined section D(2)(a) and stated that “we found nothing in the offset provision that is ambiguous.” 140 Idaho at 399, 94 P.3d at 704. However, we conclude that Reichert is distinguishable from the instant case both legally and factually. Reichert was injured by an uninsured motorist while on the job, and his employer carried liability insurance for uninsured motorists through American Foreign Insurance Company (American). Id. at 397, 94 P.3d at 702. Reichert initiated a worker’s compensation claim. Id. The industrial commission, while processing Reichert’s claim, decided that funds Reichert received for worker’s compensation would not be subject to the subrogation interest set out in I.C. § 72-223. Reichert v. Magic Valley Foods, Inc., IC 93-830670, Industrial Commission Order at 2 (November 30, 1998).[4] Before the worker’s compensation claim proceedings were completed, Reichert and American agreed to arbitrate Reichert’s uninsured motorist claim, and the arbitrator granted Reichert a compensatory damage award. Id. Reichert appealed, raising several issues. 140 Idaho at 398, 94 P.3d at 703.
The liability policy held by Reichert’s employer contained an offset provision almost identical to section D(2)(a) in Coregis’ policy. Id. Reichert argued that the offset provision was void in its entirety as against public policy because the insurer “knew that all claimants would only receive minimal, if any, coverage because all claimants would also receive worker’s compensation benefits.” Id. at 399, 94 P.3d at 704. In other words, Reichert was not arguing the gross versus net distinction that Cherry has argued; rather, he was arguing, in the first instance, that no offset for worker’s compensation should be allowed at all. This Court disagreed. Id. at 400, 94 P.3d at 705.
The dissent urges that Reichert was “in essence” advancing the same argument that Cherry makes now, “that the net money actually retained by the claimant does not reflect the gross compensation within the insurance plan.” We believe that this misses the substance of Reichert’s argument. Although Cherry’s argument is similar to Reichert’s to the extent that each claimant was attempting to maximize recovery under the UIM policy, Reichert argued a much broader proposition than does Cherry. He asserted that the worker’s compensation offset provision in section D(2)(a) effectively negated the coverage afforded by the policy and thus, coverage was illusory. Accordingly, Reichert asked this Court to declare that the offset provision was void.
Cherry does not argue that the offset provision is void or that coverage is illusory. *887 Rather, her argument focuses upon the effect of the Funds assertion of its statutory subrogation interest in her recovery from the third-party tortfeasor. The Fund’s assertion of its statutory rights has revealed a latent ambiguity in the language of the offset provision that this Court had no cause to consider under the facts of Reichert: Does the phrase “sums paid or payable” refer to the gross sum of worker’s compensation or to the net sum of worker’s compensation after the Fund’s subrogation interest is satisfied?
The dissent further argues that the Court’s definition of “payable” in Reichert answers the question of whether “sums paid or payable” refers to gross or net sums. The dissent contends there “is no other purpose to use the term ‘or payable’ ... except to cover funds to which a recipient is entitled, or funds which the recipient received but did not retain.” The difficulty with reliance on our holding in Reichert is that this Court was addressing a different question than is presented in this case. Reichert argued that the term “payable” in the offset provision limited the offset to worker’s compensation benefits already paid, as opposed to those that might be paid in the future. Id. at 402, 94 P.3d at 707. The Court held that “applying the common understanding of the word ‘payable,’ not only should the benefits that have already been paid to Reichert be deducted from the compensatory damages amount, but also any future benefits which the Industrial Commission awards.” Id. Applying the definition of “payable” in Reichert, we are still confronted with the question whether the use of the phrase “sums paid or payable” in the offset provision refers to gross or net sums paid (in the past) or gross or net sums payable (presently or in the future). In short, this case presents a markedly different situation than was addressed in Reichert. We conclude that our decision in Reichert is not inconsistent with our resolution of the ambiguity in favor of the insured in the instant case. Accordingly, albeit for different reasons, we affirm the district court’s initial decision on summary judgment in which Cherry was awarded $66,281.38.
B. Cherry is entitled to an award of attorney fees on appeal.
The district court awarded Cherry attorney fees, costs and prejudgment interest pursuant to I.C. §§ 41-1839 and § 28-22-104.[5] Coregis has not challenged that award on appeal, although in view of our determination that the order on Cherry’s motion to alter and amend must be vacated, the district court ought to reconsider aspects of that order on remand. Cherry now seeks an award of attorney fees on appeal.
Cherry’s claim for attorney fees is based upon I.C. § 41-1839. Coregis argues that an award of attorney fees ought not be awarded on appeal under I.C. § 41-1839 in cases wherein the appeal is not frivolous and was pursued in good faith. There are two provisions of I.C. § 41-1839 which may potentially apply to this appeal: subsections (1) and (4).[6] Although we have yet to award *888 attorney fees under the latter provision, we have indicated that attorney fees may properly be awarded under I.C. § 41-1839(4) when the appeal “was brought, pursued or defended frivolously, unreasonably or without foundation.” Trinity Universal Ins. Co. v. Kirsling, 139 Idaho 89, 94, 73 P.3d 102, 107 (2003). As we have vacated the district courts award of $100,000, the issues presented by Coregis in this appeal are manifestly not frivolous. Thus, there is no basis for an award of attorney fees under I.C. § 41-1839(4).
We have determined that Cherry is justly due $66,281.38 under the terms of the policy and that sum has not been paid. Coregis does not dispute that Cherry has provided the proof of loss required by I.C. § 41-1839(1). We can see no principled basis for engrafting the language of I.C. § 41-1839(4) to this provision. Accordingly, applying the plain language of the statute, we conclude that Cherry is entitled to an award of attorney fees incurred on appeal.
IV. CONCLUSION
We hold that Coregis is entitled to an offset for the $100,000 paid by Farmers under section D(2)(b) of Coregis’ policy and an offset of $36,079.63, representing the net sum of worker’s compensation benefits paid to Cherry, under section D(2)(a) of Coregis’ policy. The district courts order on Cherry’s motion to alter and amend is vacated. The district court’s original order on summary judgment is affirmed. Attorney fees and costs incurred on appeal are awarded to Cherry.
Chief Justice EISMANN and Justices BURDICK and J. JONES concur.

. Although this provision appears to relate to UM coverage, rather than UIM coverage, it is undisputed that Coregis’ policy provides UIM coverage to Cherry, despite the fact that the third-party motorist was insured. Presumably this is because section F(3) of the policy provides the following definition:
3. "Uninsured motor vehicle” means a land motor vehicle or trailer ...
(b) That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an "accident” provides at least the amounts required by the applicable law where a covered "auto” is principally garaged but that sum is less than the Limit of Insurance of this coverage ...

. We recognize that the district court’s focus on section D(2)(b) was prompted by its awareness of our decision in Am. Foreign Ins. Co. v. Reichert, 140 Idaho 394, 94 P.3d 699 (2004). In Reichert, we considered section D(2)(a) and stated: "we found nothing in the offset provision that is ambiguous.” 140 Idaho at 399, 94 P.3d at 704. As will be discussed infra, our statement in Reichert was overly broad, as it did not take into account the situation presented in the instant case wherein the Fund has asserted its statutory subrogation interest in the proceeds recovered from an insured third-party tortfeasor.

. Idaho Code § 72-223(3) provides: "If [worker’s] compensation has been claimed and awarded, the employer having paid such compensation or having become liable therefor, shall be subrogated to the rights of the employee, to recover against such third party to the extent of the employers compensation liability.”

. The Court makes no mention of the statutory subrogation interest in Reichert. The industrial commission, however, ordered that Reichert would not be subject to the statutory lien because it did not consider American to be a "third-party” as contemplated by I.C. § 72-223 and also because it found that the exclusions and limitations in American’s policy were valid. Reichert v. Magic Valley Foods, Inc., IC 93-830670, Industrial Commission Findings of Fact and Conclusions of Law at 4-7 (November 30, 1998).

. The trial court’s order awarding attorney fees, costs and prejudgment interest is not before this Court in the record on appeal. However, each of the parties has discussed the award and its statutory bases.

. Idaho Code § 41-1839 provides, in pertinent part, as follows:
(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney’s fees in such action.
(4) Notwithstanding any other provision or statute to the contrary, this section and section 12-123, Idaho Code, shall provide the exclusive remedy for the award of statutory attorney’s fees in all actions between insureds and insurers involving disputes arising under policies of insurance. Provided, attorney’s fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation. Section 12-120, Idaho Code, shall not apply to any actions between insureds and insurers involving disputes arising under any policy of insurance.