# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37172

FARM BUREAU MUTUAL INSURANCE
COMPANY OF IDAHO,

    Plaintiff-Counterdefendant-Respondent,

v.

JOHN SCHROCK, STACY SCHROCK, and
CHRISTINA MONROE,

    Defendants-Counterclaimants-Appellants,

and

LISA SCHROCK, CHRISTA SPRINGER,
APRIL SEITZINGER, and MICHELE
RUNYAN,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2010 Term

2010 Opinion No. 45

Filed:  March 22, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Honorable Randy J. Stoker, District Judge.

The judgment of the district court is affirmed.

Crandall Law Office and Emil R. Berg, Boise, for appellants. Emil R. Berg argued.

Powers Tolman, PLLC, Boise, for respondent. James S. Thomson, II, argued.
_____

J. JONES, Justice.

This is an appeal from a declaration of no coverage under an umbrella policy issued by Farm Bureau Mutual Insurance Company of Idaho ("Farm Bureau") to John and Lisa Schrock for a claim brought by their daughter Stacy Schrock. We affirm.

1

## I.
## Facts and Procedural History

Farm Bureau issued two insurance policies to John and Lisa Schrock, the City Squire Policy (the "Squire Policy"),[1] and the Personal Umbrella Policy (the "Umbrella Policy"). The Squire Policy provides up to $500,000 in automobile liability coverage, while the Umbrella Policy provides supplemental liability coverage up to $1,000,000. The inquiry here is whether coverage is available under the Umbrella Policy for injuries sustained by John and Lisa's daughter, Stacy Schrock, in a single-car accident that occurred on October 24, 2008. Lisa Schrock owned the 2001 Isuzu Rodeo involved in the accident. However, Christa Springer, a friend of Stacy's, was operating the vehicle with Stacy's permission at the time of the accident. Christina Monroe, Michele Runyan and April Seitzinger were also passengers in the vehicle at the time of the crash. All passengers in the Rodeo sustained injuries, including Stacy, who "sustained significant and permanent injuries." Farm Bureau does not dispute its liability under the Squire Policy for Stacy's injuries because a claim by Stacy against Christa is covered under the policy. However, Stacy is also making a claim under the Umbrella Policy because the severity of her injuries is likely to exceed the $500,000 limit of the Squire Policy.

To determine its liability under the Umbrella Policy, Farm Bureau filed a declaratory judgment action against the Appellants, seeking a determination of no coverage. Specifically, Farm Bureau argued there was no basis for coverage under the Umbrella Policy for a claim against Christa because she did not qualify as an insured under the policy. The coverage grant in the Umbrella Policy provides that: "We will pay **damages** for which the **insured** becomes legally responsible caused by . . . an **occurrence** to which this insurance applies that results in **bodily injury** . . ."[2] A permissive driver is not an "insured" under the Umbrella Policy, unless the driver is an employee of a named insured. Therefore, Farm Bureau argued there is no coverage for a claim brought by Stacy against Christa, because Christa is not an employee of either John or Lisa.

Additionally, Farm Bureau argued that even if the policy were to be construed to generally provide coverage, two exclusions would apply to specifically prohibit coverage. These exclusions provide:

---

[1] Although the City Squire Policy provides several types of liability coverage, all references to the "Squire Policy" in this opinion refer only to that portion of the City Squire Policy that provides motor vehicle liability coverage.
[2] All bolded terms are bolded in the original Umbrella Policy and represent defined terms. These definitions will be provided herein as necessary.

2

We do not cover:

…

9. A **permissive driver**. If state law requires that this policy apply to a **permissive driver**, however, our applicable limit of liability for an **occurrence** shall be reduced (see Part V Limit of Liability). This exclusion does not apply if the permissive driver is your employee [the Permissive Driver Exclusion]

…

16. **Personal injury**, **bodily injury**, or **property damage**, sustained by you, your spouse, your minor children, your **relative**, or any other **insured** [the Household Exclusion]

Subsequently, John Schrock, Stacy Schrock and Christina Monroe filed a counterclaim seeking a declaration of coverage under the policy. Farm Bureau filed a motion for summary judgment on the issue, and also sought a dismissal of the counterclaim. Several of the defendants filed a cross-motion for summary judgment.[3]

Appellants argued before the district court that, while there may not be coverage for a claim by Stacy against Christa under the Umbrella Policy, there would be coverage for a claim brought by Stacy against Lisa, if Christa's negligence is imputed to Lisa pursuant to I.C. 49-2417.[4] Additionally, they argued that Exclusion 8 in the Umbrella Policy is a savings clause[5] which incorporates the coverage provided by the Squire Policy into the Umbrella Policy. This section provides that:

We do not cover:

…

8. **Bodily injury** or **property damage** arising out of the ownership, maintenance, use, or entrustment to others of any **motor vehicle** unless covered by valid and collectible underlying insurance described in the Declarations, and then only to the extent such injury or **damages** are covered by such policy [Exclusion 8]

They argued that the Permissive Driver Exclusion and the Household Exclusion are in conflict with the savings clause and must be construed against Farm Bureau. Specifically, because the Permissive Driver Exclusion prohibits all coverage for permissive drivers, that exclusion would render meaningless the coverage for entrustment of an insured vehicle to another person covered by the savings clause and is, therefore, ambiguous, and should be construed in favor of coverage.

---

[3] Specifically, John Schrock, Stacy Schrock, April Seitzinger, Michele Runyan and Christina Monroe filed the cross-motion for summary judgment.

[4] This section imputes the negligence of a permissive driver to a vehicle's owner. I.C. § 49-2417(1). See Part III.C. *infra* for a further discussion of this provision.

[5] As used herein, "savings clause" means an exception to the exclusion of coverage in Exception 8 for injuries related to motor vehicle accidents. In other words, the Umbrella Policy contains a grant of coverage that would include the claim in this case but for the exclusion in Exemption 8. Where Exemption 8 then goes on to except from its limitation language the underlying policy, it saves the coverage initially granted.

Additionally, because the Household Exclusion does not specifically apply to motor vehicle insurance coverage, it should be construed narrowly and not negate coverage under the savings clause. Alternatively, they argued that the Household Exclusion should be declared void under *Farmers Ins. Group v. Reed*, 109 Idaho 849, 712 P.2d 550 (1985), which held that an exclusion for household members in a primary motor vehicle policy violated statutory insurance requirements, and that such an exclusion is violative of public policy.

The district court granted summary judgment in favor of Farm Bureau, holding that the Umbrella Policy does not provide coverage for any of the named defendants. The court determined that Exclusion 8 limited coverage under the Umbrella Policy and was not a basis for additional coverage. As such, the court ruled that there was no ambiguity between Exclusion 8 and the Permissive Driver and Household Exclusions. The district court refused to extend *Reed's* prohibition of household exclusions in motor vehicle liability insurance policies to the Umbrella Policy at issue in this case. Further, the district court held that I.C. § 49-2417 only creates imputed liability under primary motor vehicle insurance coverage and does not affect umbrella policies.

## II.
## Issues on Appeal

Appellants ask the Court to decide whether: (1) Exclusion 8 is properly construed as a savings clause; (2) if Exclusion 8 is a savings clause, is it in conflict with the Permissive Driver and Household Exclusions, rendering them ineffective to deny coverage for Stacy's claim; (3) I.C. § 49-2417 requires imputed liability up to the limits of the Umbrella Policy; (4) public policy bars Farm Bureau from using the Household Exclusion to deny coverage; and (5) Appellants are entitled to attorney fees on appeal.

## III.
## Analysis

### A. Standard of Review

This Court reviews a district court's ruling on a motion for summary judgment under the same standard as the district court. *Cherry v. Coregis Ins. Co.*, 146 Idaho 882, 884, 204 P.3d 522, 524 (2009). Summary judgment should be granted where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). The moving party has the burden of demonstrating that there is no genuine issue of

4

material fact. *Cherry*, 146 Idaho at 884, 204 P.3d at 524. "Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Castorena v. General Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010).

This Court exercises free review over questions of law, including whether an insurance policy is ambiguous. *Cherry*, 146 Idaho at 884, 204 P.3d at 524. If the language of an insurance policy is clear, then the language will be given its plain and ordinary meaning. *Farm Bureau Ins. Co. of Idaho v. Kinsey*, 149 Idaho 415, 419, 234 P.3d 739, 743 (2010). "To determine whether a policy is ambiguous, the Court must ask whether the policy is reasonably subject to conflicting interpretations." *Cherry*, 146 Idaho at 884, 204 P.3d at 524. If confronted with ambiguous language, the reviewing court must determine what a reasonable person would understand the language to mean. *Kinsey*, 149 Idaho at 419, 234 P.3d at 743. Furthermore, "[b]ecause insurance policies are contracts of adhesion that are not usually subject to negotiation between the parties, any ambiguity in a policy is construed strongly against the insurer." *Id.* To this end, "where language may be given two meanings, one of which permits recovery while the other does not, the policy should be given the construction most favorable to the insured." *Cherry*, 146 Idaho at 884, 204 P.3d at 524.

### B. Analysis of the Umbrella Policy

The Umbrella Policy makes a broad grant of liability coverage for the benefit of its named insureds. The policy says: "We will pay **damages** for which the **insured** becomes legally responsible caused by . . . an **occurrence** to which this insurance applies that results in **bodily injury** or **property damage** . . . ."[6] The Umbrella Policy states that the liability limits are only available when the damages at issue exceed the limits of an underlying insurance policy and when those underlying policy limits have been exhausted. In other words, this Umbrella Policy is an extended liability policy that provides additional coverage when an insured becomes liable for another's injuries over and above any underlying insurance—it is a supplemental liability policy.

In this case, the Squire Policy is specifically referenced in the Umbrella Policy as an underlying insurance policy with a $500,000 liability limit. Thus, for the Umbrella Policy to apply, a claim for damages must exceed the $500,000 policy limit of the Squire Policy and that limit must be exhausted. Stacy has already been awarded the limit under the Squire Policy and is

---

[6] The Umbrella Policy coverage grant is very broad and not limited to damage resulting from motor vehicle usage.

likely to exceed the limit of the Umbrella Policy. Therefore, the exhaustion requirement would be met. If Christa's negligence is imputed to Lisa, rendering Lisa "legally responsible" for Stacy's injuries,[7] then the Umbrella Policy might provide additional insurance coverage up to $1,000,000.

However, "[t]hese coverages are subject to all exclusions, terms, and conditions of this policy." Among the thirty-one exclusions from coverage in the Umbrella Policy, there are three that are relevant to this appeal—Exclusion 8, the Permissive Driver Exclusion and the Household Exclusion. As an initial point of clarification, the importance of Exclusion 8 is not that it serves as a basis for coverage under the Umbrella Policy for a claim by Stacy against Christa. Although Exclusion 8 allegedly incorporates all coverage provided by the Squire Policy, which includes coverage for a claim by Stacy against Christa, such a claim would not fall within the coverage grant of the Umbrella Policy because Christa does not qualify as an insured under the Umbrella Policy. Therefore, Appellants make clear that any claim by Stacy under the Umbrella Policy would not be against Christa but, rather, against Stacy's mother, Lisa. To this end, if Exclusion 8 is interpreted as a savings clause, it is arguably in conflict with the Permissive Driver and Household Exclusions such that those exclusions from coverage cannot be used as the basis for denial of Stacy's claim.

We need not parse through the three exclusions since the Household Exclusion clearly bars Lisa's claim. This provision states:

> We do not cover:
> …
> 16. **Personal injury**, **bodily injury**, or **property damage** sustained by you, your spouse, your minor children, your **relative**, or any other **insured**;

This section unequivocally prohibits coverage for any relative of an insured. A relative is defined as any person related to John and Lisa by blood and residing in their household, and all parties

---

[7] In order for Lisa to be legally responsible for Stacy's injuries, the scope of permission granted by Lisa to Stacy to allow others to use the Rodeo "as she saw fit," must have been broad enough to encompass the subsequent permission granted from Stacy to Christa to use the Rodeo the day of the accident. This Court has recognized that in order to impute liability under I.C. § 49-2417, there is a question of fact to be proven at trial regarding whether express or implied permission has been given. *Oregon Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co. of Idaho*, 148 Idaho 47, 52, 218 P.3d 391, 396 (2009). Because "[d]isputed facts should be construed in favor of the non-moving party," we view such factual disputes in favor of the Appellants upon review of a summary judgment motion. *Castorena*, 149 Idaho at 613, 238 P.3d at 213. As such, pursuant to I.C. § 49-2417, this Court assumes that Christa's negligence could be imputed to Lisa for the purposes of this appeal. Where Christa's negligence is imputed to Lisa, Lisa is "legally responsible" for Stacy's injuries such that her claim would fall within the initial grant of coverage under the Umbrella Policy.

conceded that Stacy met this definition. Therefore, we hold that the Household Exclusion clearly denies coverage under the Umbrella Policy for Stacy's claim because she is Lisa's relative. That being the case, we need not explore the effect of the other exclusions in this opinion.

### C. I.C. § 49-2417 Does Not Apply to the Umbrella Policy

Appellants also argue that if Christa's liability is imputed to Lisa pursuant to I.C. § 49-2417(1), subsection (2) of this provision requires coverage for Lisa's imputed liability up to the liability limits available under the Umbrella Policy. However, the district court determined that this provision only applies to motor vehicle liability policies and is, therefore, inapplicable to umbrella policies. We agree.

Idaho Code section 49-2417 imputes the negligence of a permissive driver to the vehicle's owner. "Every owner of a motor vehicle is liable . . . for the . . . injury to a person . . . resulting from negligence in the operation of his motor vehicle . . . by any person using or operating the vehicle with the permission, express or implied, of the owner . . . ." I.C. § 49-2417(1). The owner's liability is imputed up to the greater of the statutory minimums for a motor vehicle liability policy, or the liability limits provided by the insured's policy. "The liability of an owner for imputed negligence . . . is limited to the amounts set forth under 'proof of financial responsibility' in section 49-117, Idaho Code, or the limits of the *liability insurance* maintained by the owner, whichever is greater." I.C. § 49-2417(2) (emphasis added).

The statute does not define "liability insurance". The Appellants argue this phrase is intended in its broadest meaning, such that it applies to all forms of liability insurance, including the Umbrella Policy at issue in this case. We disagree with this contention.

The Legislature amended I.C. § 49-2417(2) in 2007 when it also amended I.C. § 49-1212(12) to prohibit insurers from providing step-down limits for household members under an insured's primary motor vehicle policy. *See* 2007 Idaho Sess. Laws Ch. 307. Idaho Code section 49-1212(12) provides that "[n]o motor vehicle liability policy providing coverage beyond state mandated minimum limits shall provide a reduced level of coverage to any insured's family or household member or other authorized user . . . ." I.C. § 49-1212(12). This amendment reflects a clear intent by the Legislature to prohibit step-down limits for household members and other authorized users under an insured's primary motor vehicle liability policy. Had the Legislature not amended the imputed liability provisions in I.C. § 49-2417, an insured's primary motor vehicle policy could provide coverage for "authorized users" of the vehicle, pursuant to I.C.

7

§ 49-1212(12), in excess of the statutory minimums, but nonetheless have his or her liability capped at the statutory minimums pursuant to an unamended I.C. § 49-2417(2). In other words, even though an insured's policy would provide liability coverage in excess of the statutory minimums, an owner's imputed negligence would still be limited to the statutory minimums. To prevent this anomalous result, the Legislature amended both sections at the same time. To this end, because I.C. § 49-1212(12) specifically applies to motor vehicle liability policies, and because it was amended in concert with I.C. § 49-2417(2), it stands to reason that the Legislature intended that the latter provision was also intended to be limited to motor vehicle liability policies.

Additionally, the fact that the Legislature amended these two provisions in concert without amending I.C. § 49-1212(6), which distinguishes motor vehicle liability policies from excess or supplemental policies, shows that the Legislature intended the liability insurance reference in I.C. § 49-2417 to apply only to motor vehicle liability insurance.

> Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy, and any excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants an excess of additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this section.

I.C. § 49-1212(6). In other words, an insurer can provide supplemental coverage under an umbrella policy without subjecting itself to the statutory mandates that apply to a motor vehicle liability policy. To follow the Appellants' argument that the Legislature intended to impose liability up to the limits of an insured's supplemental policy, would essentially render I.C. § 49-1212(6) a nullity, because an insurer would no longer be able to limit its liability under a supplemental liability policy without also having to comply with motor vehicle policy requirements. Consequently, we hold that the Legislature intended the words "liability insurance" in I.C. § 49-2417(2) to apply only to motor vehicle liability policies and, therefore, this provision does not apply to supplemental policies such as the Umbrella Policy at issue in this case.

8

**D. Public Policy Does Not Bar Application of the Household Exclusion in the Umbrella Policy**

Appellants assert that the Household Exclusion in the Umbrella Policy is violative of public policy, citing *Farmers Ins. Group v. Reed*, where the Court held a household exclusion in a motor vehicle liability insurance policy to be in violation of the then-extant financial responsibility statute and against public policy. 109 Idaho at 851, 712 P.2d at 552. At the time of the *Reed* decision, the relevant code section provided that "[e]very owner of a motor vehicle . . . shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered *by any person* caused by maintenance or use of a motor vehicle . . . ." I.C. § 49-233 (1978) (emphasis added) *redesignated as* I.C. §§ 49-1229 and 49-1230. This provision made no exception to the coverage requirement for "any" person injured by a motor vehicle and, therefore, could not exclude coverage for a claim brought by a family member of the insured. The Court interpreted I.C. § 49-233 as stating a clear policy of protecting injured persons, regardless of their relation to the insured, by mandating insurers to cover their claims. *Farmers*, 109 Idaho at 851, 712 P.2d at 552. The Court held that the household exclusion was against public policy because such an exclusion "in a liability insurance policy leaves completely unprotected those family members injured when another family or household member is at the wheel in a negligently caused automobile accident." *Id.*

However, unlike the clear public policy identified by the Legislature in former I.C. § 49-233, there is no indication of such a policy in I.C. § 49-2417. Indeed, based on our analysis in the previous section, there is no indication the Legislature intended to encompass umbrella policies within the coverage of I.C. § 49-2417(2). Because the Legislature has not identified a clear policy requiring coverage for all household members in an insured's umbrella policy, and because we interpret I.C. § 49-2417 to apply only to motor vehicle liability policies, we decline to extend the public policy rationale stated in *Reed* to mandate coverage for household members in umbrella policies.

**E. Appellants are Not Entitled to Attorney Fees on Appeal**

Appellants argue for attorney fees on appeal under I.C. § 12-120(3) because the case involves a commercial transaction. Although Appellants initially argued for attorney fees on appeal pursuant to I.C. § 41-1839(1), as well as § 12-121, both those claims were subsequently withdrawn. Because Appellants are not the prevailing parties, they are not entitled to attorney

fees. *Point of Rocks Ranch, L.L.C. v. Sun Valley Title Ins. Co.*, 143 Idaho 411, 415, 146 P.3d 677, 681 (2006).

## IV.
## Conclusion

Because the Household Exclusion is unambiguous in its prohibition of coverage for relatives of John and Lisa Schrock, we hold that this exclusion bars coverage for Stacy's claim. Neither I.C. § 49-2417 nor public policy require coverage of the claim. Thus, we affirm the district court. Costs on appeal to Farm Bureau.

Justice HORTON CONCURS.


Justice BURDICK, specially concurring.

Because of the clear language of the Household Exclusion in the Umbrella Policy and the fact that Stacy's claim is clearly excluded by its terms, her claim must be denied. However, were Stacy not a member of the household, I would be inclined to hold otherwise. The language in the policy is difficult to decipher. On the one hand, the Umbrella Policy appears to grant broad coverage, extending the liability protection provided under the underlying policy. Most reasonable insurance buyers would expect, based on the coverage provisions of the Umbrella Policy, that they would have protection on the same terms and conditions as provided in the underlying policy. However, the numerous exclusions tend to militate to the contrary. Ambiguous language in the exclusions may make for spirited debate between lawyers on opposing sides of the coverage controversy but such language makes it difficult for the average consumer of insurance to successfully navigate the nuances prior to an accident. In such instances, the Court has historically sided with the insured. Although it was not necessary to consider Exclusion 8 and the Permissive Driver Exclusion in reaching a determination of this case, I believe it worthwhile to briefly consider how those exclusions, and the interplay between them, may have dictated a different result had Stacy not been a member of the household.

Appellants argue that Exclusion 8 in the Umbrella Policy recognizes coverage for bodily injury claims covered by the Squire Policy and expands upon that coverage. Farm Bureau asserts, and the district court held, that Exclusion 8 is strictly a limitation of the coverage available under the Umbrella Policy. The exclusion provides:

We do not cover:

…

10

8. **Bodily injury** or **property damage** arising out of the ownership, maintenance, use, or entrustment to others of any **motor vehicle** unless covered by valid and collectible underlying insurance described in the Declarations, and then only to the extent such injury or **damages** are covered by such policy

The first phrase of this exclusion, read in isolation, excludes all coverage for automobile-related injuries. "We do not cover . . . **[b]odily injury** . . . arising out of the ownership, maintenance, use or entrustment to others of any **motor vehicle** . . ." Thus, under the first phrase, it is rather clear that the Umbrella Policy would not provide coverage for automobile accidents. However, the second phrase of Exclusion 8 specifically excepts from the exclusion claims for bodily injury that are covered by a valid, collectible and declared underlying policy. Here, the Squire Policy was valid and collectible and specifically identified in the Umbrella Policy declarations. Thus, the broad grant of coverage initially provided in the Umbrella Policy does include coverage for injuries sustained in an automobile accident. The third phrase of Exclusion 8—"and then only to the extent such injury or **damages** are covered by such policy"—is enigmatic, at best.

The third phrase of Exclusion 8 does not lend itself to a single reasonable interpretation and is, therefore, ambiguous. A first interpretation is that, even if the exception to the exclusion applies because there is valid and collectible underlying insurance, any coverage is limited to that which is available pursuant to the underlying policy. This interpretation focuses on the language, "then only to the extent such . . . **damages** are covered" by the underlying policy. To this end, Exclusion 8 merely recognizes that motor vehicle claims covered by underlying insurance are limited to the extent of that coverage. Thus, even if the Umbrella Policy applies, because a claim is covered by the Squire Policy, the latter policy provides the full extent of coverage. The problem with this interpretation is that the second and third phrases of the exclusion are rendered mere surplusage. If the intent of the Umbrella Policy was to exclude all coverage for automobile-related claims, why even tack on these two additional phrases? To accomplish that end, all the policy drafter had to do was place a period after "motor vehicle." Further, the second phrase clearly provides coverage for automobile-related injury or damages and to contend that damages are limited to those available under the Squire Policy renders any coverage under the Umbrella Policy illusory.

A second interpretation is that, while the Umbrella Policy does provide coverage for automobile-related injuries or damages where there is a declared underlying policy, coverage under the Umbrella Policy is limited "to the extent" provided in the underlying policy. The third

phrase means, in essence, that the Umbrella Policy covers injury and damages to the extent the same are covered under the Squire Policy. Under this interpretation, all phrases of the exclusion are given meaning. Thus, the Umbrella Policy would provide coverage under the same terms and conditions as the Squire Policy, including the $500,000 limit of that policy. The $1,000,000 limit of the Umbrella Policy would not apply.

Yet another interpretation, and the one proffered to by Farm Bureau's counsel during oral argument before this Court, is that when a claimant meets the condition of coverage by having a declared underlying policy, the claim will be covered to the full limits of the Umbrella Policy, so long as the claim falls within the coverage grant of the Umbrella Policy and is not otherwise excluded. Thus, Stacy would be entitled to the $500,000 limit under the Squire Policy, as well as the $1,000,000 limit available under the Umbrella Policy, so long as the claim is within the coverage grant of the Umbrella Policy and not prohibited by other exclusions. This interpretation would provide coverage for injury and damages under comparable conditions as the Squire Policy, except that the limits of coverage would be those specifically stated on the declaration sheet of the Umbrella Policy. This makes sense because Exclusion 8 speaks of injury or damages but makes no mention of limits.

Because Exclusion 8 "is reasonably subject to conflicting interpretations," it is ambiguous. *Cherry*, 146 Idaho at 884, 204 P.3d at 524. Furthermore, because the Umbrella Policy is a contract of adhesion and is not subject to negotiation between the parties, the ambiguity must be construed strongly against Farm Bureau and in favor of coverage. *See Kinsey*, 149 Idaho at 419, 234 P.3d at 743. The most favorable interpretation, and the one that makes the most sense based on the policy language, is that the Umbrella Policy provides the same liability coverage as the Squire Policy but that the terms "injury or damages" do not include the liability limits specifically stated in the declaration sheet of the Umbrella Policy. Thus, additional coverage is dictated by the terms of the Umbrella Policy up to its $1,000,000 liability limit, unless the Permissive Driver Exclusion dictates otherwise.

Considering Exclusion 8 as a savings clause, what is its effect on the Permissive Driver Exclusion? The latter provision states:

We do not cover:

…

9. A **permissive driver**. If state law requires that this policy apply to a **permissive driver**, however, our applicable limit of liability for an **occurrence** shall be reduced (see

Part V Limit of Liability). This exclusion does not apply if the permissive driver is your employee;

Appellants contend that this exclusion is in conflict with Exclusion 8. They point out that Stacy's claim was covered under the Squire Policy, that Exclusion 8 is properly interpreted to extend the same coverage under the terms of the Umbrella Policy, and that the Permissive Driver Exclusion conflicts with Exclusion 8. They further assert that Exclusion 8 is reasonably read to provide coverage for liability resulting from "entrustment [of a motor vehicle] to others" when there is valid and collectible underlying insurance. They assert that the coverage in Exclusion 8 for entrustment to others is broader than the exclusion for permissive drivers and that anyone to whom an automobile is entrusted will by definition be a permissive driver. They argue that application of the Permissive Driver Exclusion would make meaningless the Exclusion 8 language regarding entrustment to others. Thus, the coverage provided by the Umbrella Policy via the exception to the exclusion in Exclusion 8 would be rendered illusory. On the other hand, Farm Bureau argues, first, that Exclusion 8 is not a savings clause and, second, that the Permissive Driver Exclusion operates separately and independently of Exclusion 8. Based on its determination that Exclusion 8 was unambiguous in limiting the scope of coverage under the Umbrella Policy, the district court held that the Permissive Driver Exclusion prohibited coverage under the policy. I believe the district court erred in so holding.

The Permissive Driver Exclusion is a restrictive clause and must be construed narrowly. As we recently stated in *Kinsey*, "Following the general tenets of insurance contract interpretation, terms are given their broad meaning in cases involving the extension of liability coverage and are construed narrowly in those cases involving exclusion from coverage." 149 Idaho at 419, 234 P.3d at 743 (quoting 9A STEVEN PLITT, ET AL., COUCH ON INSURANCE § 128:6 (3d ed. 2009)). An insurer must use clear and precise language if it wishes to restrict its coverage. *Farmers Ins. Co. of Idaho v. Talbot*, 133 Idaho 428, 435, 987 P.2d 1043, 1050 (1999). When confronted with ambiguous, unclear, or conflicting provisions in an insurance policy, we should not consider how a clever insurance expert might construe them but, rather, we should determine what a reasonable person would understand the language to mean. *Id.* Further, where two provisions of an insurance policy attempt to limit coverage in different ways, ambiguity exists and "[b]ecause ambiguity exists, the traditional rule of construction applies—*i.e.* the insurance contract must be construed strongly against the insurer." *Id.*

The Appellants' argument regarding potential conflict between the entrustment language of Exclusion 8 and the Permissive Driver Exclusion is well taken. A reasonable insurance buyer may well believe that Exclusion 8 extends all coverage available under the underlying policy and conclude that the entrustment language supersedes the Permissive Driver Exclusion. However, even though the issue may be confusing to a lay person buying insurance, the legal concepts differ. A negligent entrustment claim and a claim for imputed negligence are both forms of negligence, rendering the owner of a vehicle liable for the driver's use of the vehicle. However, an entrustment claim is a direct negligence action against the owner of a vehicle for negligently entrusting the vehicle to another with knowledge of the driver's poor driving habits. *Olguin v. City of Burley*, 119 Idaho 721, 724, 810 P.2d 255, 258 (1991) ("Negligent entrustment is nothing more than a particularized application of the general tort principles contained in the concept of negligence."). However, under I.C. § 49-2417, an owner is liable for the negligence of the permissive driver because such negligence is imputed to the owner, not because the owner personally acted with negligence. "Under Idaho law, the owner of a motor vehicle is liable when any person using or operating the vehicle 'with the permission, expressed or implied, of the owner' operates that vehicle negligently. *Oregon Mut. Ins. Co.*, 148 Idaho at 52, 218 P.3d at 396 (citing I.C. § 49-2417(1)).

Appellants' better argument is that the language of Exclusion 8, which appears to grant the same coverage under the Umbrella Policy as is available under the Squire Policy, is in conflict with the Permissive Driver Exclusion. While Appellants argue it is the entrustment language in Exclusion 8 that creates tension with Exclusion 9, it is the "use" of the insured's vehicle covered by Exclusion 8 that is undermined by the Permissive Driver Exclusion. Specifically, a permissive driver's "use" of the insured's vehicle is covered by Exclusion 8's extension of the Squire Policy. Therefore, the attempt to prohibit all coverage of permissive drivers, excepting employee drivers, in the Permissive Driver Exclusion is in direct conflict with the broader grant of "use" coverage extended to the Umbrella Policy by the Squire Policy in Exclusion 8. Moreover, the Permissive Driver Exclusion does not specifically limit liability coverage in a situation where underlying motor vehicle insurance exists, while Exclusion 8 is specifically applicable where underlying motor vehicle insurance covers the claim at issue. Based upon the applicable tenets of insurance contract interpretation, we should narrowly construe the Permissive Driver Exclusion as limiting coverage under the Umbrella Policy only in

14

the situation where there is no coverage pursuant to an underlying motor vehicle policy. Thus, had we reached the issue, which was fully argued by the parties, I would have held that the Permissive Driver Exclusion was not effective to deny coverage for Stacy's claim.

Justice J. JONES, CONCURS.


Chief Justice EISMANN, specially concurring.

I concur in the opinion, but write solely to address the policy provisions addressed by Justice Burdick in his concurring opinion.

Exclusion 8 provides:

We do not cover:
. . . .
8. **Bodily Injury** or **property damage** arising out of the ownership, maintenance, use, or entrustment to others of any **motor vehicle** unless covered by valid and collectible **underlying insurance** described in the Declarations, and then only to the extent such injury or **damages** are covered by such policy;[8]
. . . .

The proper interpretation of this clause requires an understanding of the difference between an umbrella policy and a policy of primary insurance. An umbrella policy is "[a] form of insurance protection against losses in excess of the amount covered by other liability insurance policies." *Black's Law Dictionary* 808 (6th ed. 1990). The risk assumed, and therefore the premium to be charged, depends upon the coverage in the underlying policy of primary insurance. The less coverage in the underlying policy, the greater risk assumed by the insurer issuing an umbrella policy. Therefore, this exclusion accomplishes three things.

First, it defines the type of conduct to which this exclusion applies—"the ownership, maintenance, use, or entrustment to others of any **motor vehicle**." This exclusion only applies to a cause of action against an insured for bodily injury or property damage that is predicated upon the insured's ownership of the vehicle (e.g., pursuant to a statute imputing liability), or the insured's maintenance of the vehicle (e.g., negligent failure to properly maintain the vehicle), or the insured's use of the vehicle (e.g., negligent operation), or the insured's entrustment of the vehicle to another (e.g., to someone who was unlicensed or under the influence). This exclusion

---

[8] The bolding, when quoting policy provisions, is in the policy.

15

would not apply to a cause of action against the insured that is based upon some other type of conduct.

Second, it prevents the umbrella policy from becoming a policy of primary insurance when a cause of action against an insured is based upon the listed conduct. There is no coverage unless the cause of action is "covered by valid and collectible **underlying insurance** described in the Declarations." The insurer knows the coverage provided by the underlying insurance policy that is described in the declarations and therefore the risk it assumed under the umbrella policy. It is not willing to assume the risk if the policy of primary insurance provides less coverage than the one described in the declarations or if that policy for some reason does not pay the loss to the full amount of its coverage. Therefore, for there to be coverage under the umbrella policy for the conduct listed in this exclusion, there must be coverage under that underlying insurance policy, the underlying policy must be valid, and the sums payable under the policy must be collectible.

Third, it limits the type of injury and/or damage that is covered by the umbrella policy. It only covers injury or damages "to the extent such injury or **damages** are covered by such [underlying] policy." Thus, if the injured party seeks to recover for a type of injury or a type of damage not covered under the underlying policy, such injury or damage is not covered under the umbrella policy. Without this provision, the umbrella policy could become a primary policy as to an injury or damage that was not covered under the underlying policy.

Exclusion 8 is not and does not include a saving clause. Exclusion 9 does include a type of saving clause. It provides:

> We do not cover:
> . . . .
> 9. A **permissive driver**. If state law requires that this policy apply to a **permissive driver**, however, our applicable limit of liability for an occurrence shall be reduced (see Part V Limit of Liability). This exclusion does not apply if the **permissive driver** is your employee;
> . . . .

Exclusion 9 excludes coverage of a permissive driver. However, it contains a proviso that if the permissive driver exclusion is contrary to the law of the applicable jurisdiction, the limit of liability under the umbrella policy for the permissive driver will be reduced. It, in essence, seeks to save the exclusion to an extent by reducing the limit of liability if state law

16

requires that the permissive driver be covered by an umbrella policy. Idaho law does not so require.

There is no conflict between Exclusions 8 and 9. Exclusion 8 does not grant coverage to permissive drivers. It is an exclusion clause, not an insuring clause. It simply states that the umbrella policy does not provide coverage for bodily injury or property damage "arising out of the ownership, maintenance, use, or entrustment to others of any **motor vehicle**" unless such injury or damage was covered under a valid and collectible policy of underlying insurance. It limits the insured's coverage under the umbrella policy. If the insured fails to maintain the policy of underlying insurance, then the insured would not have coverage under the umbrella policy for a cause of action arising out of the ownership, maintenance, use, or entrustment to others of any motor vehicle.

Exclusion 9 has nothing to do with the insured's coverage. It does not exclude coverage for a cause of action asserted against the insured based upon the insured giving permission to someone else to drive the motor vehicle. It excludes coverage for the permissive driver. It states, "We do not cover . . . [a] **permissive driver**." It does not say, "We do not cover you for bodily injury or property damage arising out of your entrustment to others of a motor vehicle or arising out of your ownership of a motor vehicle." A "permissive driver" is not an insured because an insured must have given the permissive driver permission to use the motor vehicle.[9] Thus, if the permissive driver negligently injured another and the permissive driver's negligence was imputed to the insured as the owner of the motor vehicle, the insured would be covered but the permissive driver would not be.

Under the policy, the words "you" and "your" mean "a person named in the Declarations as an insured and that person's spouse if a resident of the same household." The persons named in the declaration page of the umbrella policy were John and Lisa Schrock. A permissive driver must be someone whom "an **insured** gave permission for the type of use of the **motor vehicle**." The umbrella policy defines an "insured" as "you, and if residents of your household, your spouse, your **relatives**, or minors in the care of you or your relatives." Stacy would be an insured under the policy, and she gave Christa Springer permission to use the Isuzu Rodeo.

---

[9] The umbrella policy defines "permissive driver" as "any person or organization while using a motor vehicle owned by, rented by, or loaned to you or any insured and covered by this policy, provided that *an insured* gave permission for the type of use of the motor vehicle." (Emphasis added.)

Therefore, Christa would be a permissive driver who would not be covered. However, as the owner of the vehicle Lisa Schrock would be liable for Christa's negligence under Idaho Code § 49-2417(1). The fact that Christa, as a permissive driver, would not be covered does not mean that Lisa Schrock would not be covered for any claim made against her under as the owner of the Isuzu.

Justice W. JONES CONCURS.